Ryan B. Abbott (5053673)
 ryan@bnsklaw.com
Rowennakete P. Barnes (5528955)
 kete@bnsklaw.com
**BROWN NERI SMITH & KHAN, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff,*
The ProImmune Company, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PROIMMUNE COMPANY, LLC, a Delaware limited liability company;<br><br>    Plaintiff,<br>v.<br><br>HOLISTA COLLTECH LTD., an Australian corporation; and DOES 1-50, inclusive;<br><br>    Defendants. | Case No.:   7:20-cv-1247<br><br>**COMPLAINT FOR**<br><br> 1. **BREACH OF CONTRACT**<br> 2. **BREACH OF CONTRACT**<br> 3. **BREACH OF CONTRACT**<br> 4. **BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff The ProImmune Company, LLC, ("Plaintiff" or "ProImmune"), by its attorneys, Brown Neri Smith & Khan, LLP, alleges against Defendant Holista Colltech Ltd. ("Defendant" or "Holista") as follows:

COMPLAINT

## NATURE OF THE ACTION

1. Plaintiff ProImmune is the creator and owner of Immune Formulation 200® (the "Product"), a patented dietary supplement independently proven to increase bodily Glutathione levels. Glutathione is an antioxidant capable of preventing damage to important cellular components caused by reactive oxygen species such as free radicals, peroxides, lipid peroxides, and heavy metals.

2. The Product was created by Dr. Albert B. Crum and is the subject of numerous patents in the United States and in other jurisdictions. The product is marketed and licensed commercially.

3. Defendant Holista is a contracted distributor of the Product. Holista contracted with ProImmune for exclusive distribution rights for Malaysia, Singapore, Brunei, Thailand, Indonesia, and the Philippines (the "Territory").

4. Defendant Holista describes itself as "a research-driven biotech company…dedicated to delivering first-class natural ingredients and wellness products, [leading] research on herbs and food ingredients." Holista states that its mission "is to provide society with all natural health-style products through innovations that advances the eminence of life and meeting customer needs, providing employees with momentous work environment and advancement opportunities, enhancing partner's business and investors with a greater rate of return."[1]

5. ProImmune and Holista entered into four distribution agreements ("Agreements") between March 16, 2015 and October 25, 2019. Each agreement had minimum annual

---

[1] http://www.holistaco.com/about-us.html

performance requirements that obligated Holista to purchase a certain amount of the Product from ProImmune.

6. <u>Holista never once met its minimum annual performance requirements under the Agreements</u>, despite reporting favorable financials in its mandatory, audited annual reports as a publicly traded company in Australia.

7. The Agreements also contained detailed and mutually negotiated provisions for disputing the quality of Product. At no point did Holista raise an issue as to the quality of the Product as required by the Agreements, nor has it objected otherwise to its performance or obligations, until it was sent a demand to cure its past breaches and pay those outstanding amounts due. It has never complained that ProImmune failed to meet any of its obligations under any of the Agreements.

8. ProImmune demanded that Holista cure the harm caused by its failure to meet the minimum annual performance requirements and Holista refused. ProImmune sues Holista to recover for the injuries caused.

**PARTIES**

9. Plaintiff The ProImmune Company, LLC is a Delaware limited liability company, with its principal place of business in Rhinebeck, New York.

10. Defendant Holista Colltech Ltd, is an Australian corporation with its principal place of business in West Perth, Australia.

11. The true names and capacities of the Defendants sued as DOES 1-50 are presently unknown to Plaintiff, who therefore, sues these defendants by fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each fictitiously named defendant is responsible, in some manner, for the acts and omissions alleged herein. Plaintiff will seek leave

of the court to amend this complaint to set forth the names and capacities of each fictitiously named defendant after they have been ascertained.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between ProImmune and Holista, and the amount in controversy exceeds $75,000, exclusive of costs and interests.

13. Venue is proper in this District under 28 U.S.C. § 1391 because the parties contractually submitted to the jurisdiction of this Court and waived any right to assert inconvenient forum as a ground for contesting venue.

## GENERAL ALLEGATIONS

### The Distribution Agreements

14. On March 16, 2015, ProImmune and Holista entered into a distribution agreement whereby ProImmune appointed Holista its exclusive distributor of the Product throughout the territory ("Agreement #1").

15. According to Agreement # 1, Holista "agree[d] to purchase 1,000 kilograms…upon execution…for an aggregate price of $89,100." Following the initial 1,000-kilogram purchase, "Holista agree[d] to purchase…not less than the minimum quantities of Product required to meet the Minimum Monthly Performance Requirements."

16. Within 7 days of receipt of the product, Holista was required to have the product inspected, ensure that it met acceptance requirements, and if not, reject the product. Hollista did not reject any orders, deeming them accepted pursuant to Agreement #1.

17. Under Agreement #1, the minimum monthly performance requirements for Holista were divided by country. For Malaysia, Holista's minimum monthly performance requirements

3

were 1,000 kg for February, 2,000 kg for May, and 2,000 kg for November for a total of 7,000 kg. For Singapore, Holista's minimum monthly performance requirements were 50 kg for May, 100kg for July, 100 kg for October, and 100 kg for January 2016, for a total of 350 kg. For Indonesia, Holista's minimum monthly performance requirements were 500 kg for May, 500 kg for August, and 500 kg for November, for a total of 1,500 kg. For the Philippines, Holista's minimum monthly performance requirements were 100 kg for May, 200kg for October, and 200 kg for January 2016, for a total of 500 kg. For Thailand, Holista's minimum monthly performance requirements were 100 kg for May, 300 kg for September, and 300 kg for January 2016, for a total of 700 kg. Finally, for Brunei, Holista's minimum monthly performance requirements were 50 kg for May, 50 kg for August, and 50 kg for November, for a total of 150 kg.

18. For all countries, the total minimum monthly performance requirements were a total of 10,200 kg. For the first 10,000 kg, Holista received a price of $40.50 USD per pound. Holista was required to pay $54.00 USD per pound for the next 1,000 kg.

19. Under Agreement #1, Holista's total purchases under the minimum monthly requirements were supposed to equal $916,493.94. Holista only purchased $463,320 though. Payments under the contract were short $453,173.94.

20. On June 2, 2016, the Parties entered into another distribution agreement ("Agreement #2"), again appointing Holista as ProImmune's exclusive distributor of the Product throughout the Territory.

21. Under Agreement #2, Holista "agree[d] to purchase…. not less than the minimum quantities of Product required in order to meet the Minimum Annual Performance Requirements."

22. Holista's minimum annual performance requirements were 2,000 kg for the first and second quarter of 2016, 5,000 kg for the third quarter, and 5,000 kg for the fourth. The total

amount due under Agreement #2 meeting minimum annual performance requirements was $1,071,445.32. Holista failed to meet those requirements though, with its purchases under Agreement #2 totaling only $400,950.

23. Agreement #2 expanded the inspection period for purchased product to 21 days from receipt. Holista again never rejected any shipments made throughout the term of Agreement #2.

24. On January 31, 2017, the Parties entered into a third distribution agreement ("Agreement #3"). As with the prior two, Holista was appointed ProImmune's exclusive distributor of the Product throughout the Territory.

25. Under Agreement #3, Holista "agree[d] to purchase…not less than the minimum quantities of Product required in order to meet the Minimum Annual Performance Requirements."

26. Holista's Agreement #3 minimum annual performance requirements were 6,000 kg for the first and second quarter of 2017, 3,000 kg for the third quarter, and 3,000 kg for the fourth quarter. The total amount due under Agreement #3 meeting minimum annual performance requirements was $1,071,445.32. Holista failed to meet those requirements though, with its purchases under Agreement #3 only totaling $891,000.

27. As with Agreement #2, Holista had 21 days to inspect the product upon receipt under Agreement #3. No orders were rejected.

28. Finally, on September 1, 2018, the Parties entered into a fourth Distribution Agreement ("Agreement #4"). Holista again was appointed the exclusive distributor of the Product throughout the Territory.

29. As with the three prior agreements, Holista "agree[d] to purchase…not less than the minimum quantities of Product in order to meet the Minimum Annual Performance Requirements."

30. Holista's Agreement #4 minimum annual performance requirements were 4,000 kg for the third quarter of 2018, 3,500 kg for the fourth quarter of 2018, and 4,500 kg for the fourth quarter add-on 2018. The total amount due under Agreement #4 meeting minimum annual performance requirements was $1,071,445.32. Holista failed to meet those requirements, with its purchases under Agreement #4 only totaling $311,650.

31. As with Agreement #2 and #3, Holista had 21 days to inspect the product upon receipt under Agreement #4. No orders were rejected.

32. ProImmune demanded that Holista cure its breaches in failing to meet the Minimum Annual Performance Requirements under Agreements #1-4 and Holista refused.

33. In addition to the Minimum Annual Performance Requirements, two of the distribution agreements (#1 and #4) provided that Holista would be liable for ProImmune's attorney's fees if it breached.

- Holista agrees to do the following: 2.3.5 assume and discharge for its own account all costs and expenses necessary or incidental to the distribution of the Product (including but not limited to, packaging, advertising, taxes, licenses and permits) and *shall indemnify PROIMMUNE against all costs, expenses, claims, promises, guarantees, debts, obligations and liabilities of any kind incurred, contractor for, or created by HOLISTA, which have not been specifically assumed in writing and in advance by PROIMMUNE*[.]
- *Additionally, direct legal fees associated with* any future modifications *and/or compliance of this Agreement will be charged back to Holista for issues it initiates*.

34. ProImmune sues Holista here to recover the amounts due under those contracts.

**FIRST CAUSE OF ACTION**

**(Breach of Contract**

35.     Plaintiff realleges and incorporates by reference paragraphs 1 through 34 as if fully alleged herein.

36.     ProImmune and Holista entered into Agreement #1 for the purchase and distribution of the Product as described above.

37.     ProImmune did all, or substantially all, of the significant things that the contract required it to do.

38.     Defendant breached the contract by failing to meet the minimum annual purchase requirements as described above.

39.     ProImmune was harmed as a result of Holista's breach at an amount of at least $453,173.94 exclusive of costs, interest, or attorney's fees.

**SECOND CAUSE OF ACTION**

**(Breach of Contract**

40.     Plaintiff realleges and incorporates by reference paragraphs 1 through 39 as if fully alleged herein.

41.     ProImmune and Holista entered into Agreement #2 for the purchase and distribution of the Product as described above.

42.     ProImmune did all, or substantially all, of the significant things that the contract required it to do.

43.     Defendant breached the contract by failing to meet the minimum annual purchase requirements as described above.

44. ProImmune was harmed as a result of Holista's breach at an amount of at least $670,495.32, exclusive of costs and interest.

### THIRD CAUSE OF ACTION

**(Breach of Contract**

45. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as if fully alleged herein.

46. ProImmune and Holista entered into Agreement #3 for the purchase and distribution of the Product as described above.

47. ProImmune did all, or substantially all, of the significant things that the contract required it to do.

48. Defendant breached the contract by failing to meet the minimum annual purchase requirements as described above.

49. ProImmune was harmed as a result of Holista's breach at an amount of at least $180,445.32 exclusive of costs and interest.

### FOURTH CAUSE OF ACTION

**(Breach of Contract**

50. Plaintiff realleges and incorporates by reference paragraphs 1 through 49 as if fully alleged herein.

51. ProImmune and Holista entered into Agreement #4 for the purchase and distribution of the Product as described above.

52. ProImmune did all, or substantially all, of the significant things that the contract required it to do.

53. Defendant breached the contract by failing to meet the minimum annual purchase requirements as described above.

54. ProImmune was harmed as a result of Holista's breach at an amount of at least $759,795.32 exclusive of costs, interests, and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, ProImmune prays for the following relief:

1. Compensatory damages in an amount according to proof at the time of trial, but no less than $2,063,909.90;

2. Pre- and post-judgment interest;

3. Attorney's fees and costs in this action, to the greatest extent permissible by law;

4. Any other relief as the Court may deem just and proper.


Dated: February 12, 2020            **BROWN NERI SMITH & KHAN, LLP**


                                    By:   s/ Ryan Abbott
                                          Ryan Abbott

                                    11601 Wilshire Blvd., Ste. 2080
                                    Los Angeles, CA 90025
                                    (310) 593-9890

                                    *Attorneys for Plaintiff*,
                                    ProImmune

9

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff ProImmune hereby requests a trial by jury on all issues.

Dated: February 12, 2020                              BROWN NERI SMITH & KHAN, LLP


By:   /s Ryan Abbott
         Ryan Abbott

11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
(310) 593-9890

*Attorneys for Plaintiff*,
ProImmune