Ryan B. Abbott (5053673)
 ryan@bnsklaw.com
Rowennakete P. Barnes (5528955)
 kete@bnsklaw.com
**BROWN NERI SMITH & KHAN, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff/Counterclaim-Defendant,*
The ProImmune Company, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE PROIMMUNE COMPANY, LLC, a Delaware limited liability company;<br><br>            Plaintiff,<br>v.<br><br>HOLISTA COLLTECH LTD., an Australian corporation; and DOES 1-50, inclusive;<br><br>            Defendants. | Case No.: 7:20-cv-01247-KMK |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S**

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF**

**MOTION FOR SUMMARY JUDGMENT**

**(REDACTED PURSUANT TO COURT ORDER ECF # 43)**

Pursuant to Local Rule 56.1, Plaintiff/Counterclaim Defendant The ProImmune Company, LLC ("ProImmune") submits the following statement of undisputed material facts in support of its motion for summary judgment.

## CAUSE OF ACTION NO. 1 – BREACH OF CONTRACT

| Undisputed Material Fact and Supporting Evidence | Holista's Response |
|---|---|
| 1. On March 16, 2015, ProImmune and Holista Colltech, Ltd. ("Holista") entered into a distribution agreement ("Contract No. 1").<br><br>Declaration of Albert Crum, M.D. ("Dr. Crum Decl."), ¶ 2, Ex. A. | |
| 2. Under Contract No. 1, "Minimum Monthly Performance Requirements" were defined as "the minimum monthly performance targets required to be satisfied by HOLISTA as specified in Schedule 3" in Contract No. 1.<br><br>Dr. Crum Decl. ¶ 2, Ex. A, section 1.1.5. | |
| 3. Section 3.1 of Contract No. 1 required Holista "to purchase 1,000 kilograms (the **"Initial Order"**), upon execution of [the] Agreement at an aggregate price of US$89,100."<br><br>Dr. Crum Decl. ¶ 2, Ex. A, section 3.1 | |
| 4. Holista agreed "to purchase from PROIMMUNE, for distribution within the Territory, not less than the minimum quantities of Product Required in order to meet the Minimum Monthly Performance Requirements" during the Term of Contract No. 1. | |

| | |
|---|---|
| Dr. Crum Decl. ¶ 2, Ex. A, sections 3.4 | |
| 5. Contract No. 1 set a price for the Product at US$40.50 per pound for the first 10,000kg, US $54.00 per pound for the next 1,000 kg; US $47.25 per pound for the next 5,000 kg; $40.50 per pound for the next 10,000 kg; and once the aggregate amount of orders totals 20,000 kilograms, a credit would be issued to Holista in an amount that will make the price per pound on orders over 16,000 kilograms equal US$40.50. All Product pricing was FOB quoted in United States dollars.<br><br>Dr. Crum Decl. ¶ 2, Ex. A, Schedule 1. | |
| 6. Holista's total Minimum Monthly Performance Requirements under Contract No. No. 1 were 10,200 kg.<br><br>Dr. Crum Decl. ¶ 2, Ex. A, Schedule 3. | |
| 7. ProImmune performed all of its obligations under Contract No. 1<br><br>Dr. Crum Decl. ¶ 10; Declaration of Ryan Abbott ("Abbott Decl.") ¶ 2, Ex. A [Dr. Rajen Depo I] at 129:3-5, 129:22-25. | |
| 8. Holista only purchased 6,400 kg of Product under Contract No. 1 for a total price of $570,240 and did not meet the Minimum Annual Performance Requirements.<br><br>Abbott Decl. ¶ 4, Ex.C [Holista's Responses to ProImmune's First Set of Interrogatories], Ex. A; Dr. Crum Decl. ¶ 17a.v. | |
| 9. ProImmune expected a profit of ▆▆▆▆ from the sale of the ▆▆▆ ▆▆▆ of Product under Contract No. | |

3

| | |
|---|---|
| 1 and expected a profit of ▇▇▇▇▇ ▇▇▇▇▇ required to be purchased.<br><br>Dr. Crum Decl. ¶ 17.a.v. | |
| 10. ProImmune was damaged by Holista's failure to purchase the Monthly Performance Requirements in the amount of ▇▇▇▇<br><br>Dr. Crum Declaration ¶ 17.a.vi. | |

## CAUSE OF ACTION NO. 2 – BREACH OF CONTRACT

| **Undisputed Material Fact and Supporting Evidence** | **Holista's Response** |
|---|---|
| 11. On July 2, 2016, ProImmune and Holista entered into another distribution agreement ("Contract No. 2")<br><br>Dr. Crum Decl. ¶ 3, Ex. B. | |
| 12. Contract No. 2 defined "Minimum Annual Performance Requirements" as "the minimum annual performance targets required to be satisfied by Holista as specified in Schedule 3 attached hereto"<br><br>Dr. Crum Decl. ¶ 3, Ex. B, section 1.1.9. | |
| 13. Under Contract No. 2, Holista agreed to "purchase from ProImmune, for distribution within the Territory, not less than the minimum quantities of Product required in order to meet the Minimum Annual Performance Requirements" during each year of the Term. | |

| | |
|---|---|
| Dr. Crum Decl. ¶ 3, Ex. B, sections 1.1.19, and 3.1. | |
| 14. The Product Price was "Price per lb in minimum orders of 1,000 kg is US$40.50 FOB."<br><br>Dr. Crum Decl. ¶ 3, Ex. B, Schedule 1. | |
| 15. Contract No. 2's Minimum Annual Purchase Requirements were 2,000 kg for the first quarter of 2016, 5,000 kg for the third quarter of 2016, and 5,000 kg for the fourth quarter of 2016, for a total of 12,000 kg.<br><br>Dr. Crum Decl. ¶ 3, Ex. B, Schedule 3. | |
| 16. ProImmune performed all of its obligations under Contract No. 2.<br><br>Dr. Crum Decl. ¶ 10. | |
| 17. Holista only purchased 4,000 kg of Product for a total price of $356,400 and did not meet the Minimum Annual Performance Requirements.<br><br>Abbott Decl. ¶ 4, Ex. C [Holista's Responses to ProImmune's First Set of Interrogatories], Ex. A; Dr. Crum Decl. ¶ 17.b.v. | |
| 18. ProImmune expected a profit of $73.66/kg under Contract No. 2.<br><br>Dr. Crum Decl. ¶ 17b.iv-vi; Request for Judicial Notice, Ex. A; Abbot Decl. ¶ 5, Ex. D. | |
| 19. ProImmune was damaged by Holista's failure to purchase the Monthly Performance Requirements in the amount of ███████ | |

| | |
|---|---|
| Dr. Crum Decl. ¶ 17b.vii. | |

## CAUSE OF ACTION NO. 4 – BREACH OF CONTRACT

| Undisputed Material Fact and Supporting Evidence | Holista's Response |
|---|---|
| 20. On September 1, 2018, ProImmune and Holista entered into another distribution agreement ("Contract No. 4")<br><br>Dr. Crum Decl. ¶ 4, Ex. C. | |
| 21. Contract No. 4 defined "Minimum Annual Performance Requirements" as "the minimum annual performance targets required to be satisfied by Holista as set out more specifically in Schedule 3 attached hereto."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 1.1.9. | |
| 22. Contract No. 4 defines "Pick-up Address" as "the address of the manufacturer of the Product specified by ProImmune in its Invoice for the Purchase Order."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 1.1.11. | |
| 23. Contract No. 4 defines "Pick-up Date" as "the date stated as the pick-up date in the Invoice, unless modified by written notice to Holista by ProImmune."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 1.1.12. | |
| 24. Holista agreed "to purchase from ProImmune, for distribution within the Territory, not less than the minimum quantities of Product required in order to meet the Minimum Annual Performance | |

| | |
|---|---|
| Requirements" during each year of the Term of Contract No. 4.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, sections 1.1.19 and 3.1. | |
| 25. ProImmune was required to "deliver the Product to the Pick-Up Address within the time stipulated by Holista in the purchase order, unless ProImmune notifies Holista of any delay."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 3.6. | |
| 26. The Product Price under Contract No. 4 was US $40.50/LB ($89.10 per kg) FOB with various product rebate percentages applicable upon Holista meeting specified purchase thresholds.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, Schedule 1, ¶ 6, and Schedule 4. | |
| 27. Holista's Minimum Annual Performance Requirements under Contract No. 4 were 4,000 kg for the third quarter of 2018, 3,500 kg for the fourth quarter of 2018, and 4,500 kg for a fourth quarter add-on for 2018.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, Schedule 3. | |
| 28. ProImmune performed all of its obligations under Contract No. 4 in delivering the Product to the Pick-up Address and informing Holista that the Product was available for Pick-Up.<br><br>Dr. Crum Decl. ¶¶ 10, and 15, Ex. F. | |

| | |
|---|---|
| 29. The Product that ProImmune supplied conformed to the specifications as required under Contract No. 4.<br><br>Dr. Crum Decl. ¶ 13 and 14, Ex. C, Schedule 1, ¶ 2; Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 225:17-23, 228:4-9, 230:20-231:15. | |
| 30. Holista only purchased 3,500 kg of Product under Contract No. 4 for a total price of $311,850.00 and did not meet the Minimum Annual Performance Requirements.<br><br>Abbott Decl. ¶ 4, Ex. C [Holista's Responses to ProImmune's First Set of Interrogatories], Ex. A; Dr. Crum Decl. ¶ 17.c.v. | |
| 31. ProImmune expected a profit ▮▮▮▮ per kilogram under Contract No. 4.<br><br>Dr. Crum Decl. ¶ 17.c.iv. | |
| 32. ProImmune was damaged by Holista's failure to purchase the Monthly Performance Requirements in the amount of $▮▮▮▮.<br><br>Dr. Crum Decl. ¶ 17.c.vi. | |
| 33. Under section 3.3 of Contract No. 4, "Not less than sixty (60) days prior to the expiry of the Initial Term or any Renewal Term, as the case may be, the parties shall mutually agree in writing to and set the Minimum Annual Performance Requirement to be met by the Holista in the ensuing one (1) year, which will be increased over the Minimum annual Performance Requirement of the prior one (l) year, and the Purchase Price for the ensuing one (1) year, whereupon Schedules 1 and 3 hereto shall be deemed | |

8

| | |
|---|---|
| amended accordingly to reflect such Minimum Annual Performance Requirements and Purchase Price agreed to for such ensuing one (1) year period.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 3.3. | |
| 34. Under Section 3.4 of Contract No. 4, "In the event that Holista and ProImunne are unable to mutually agree to and set the Minimum Annual Performance Requirements to be met by Holista in the ensuing one (1) year period, not less than sixty (60) days prior to the expiry of the Initial Term or any Renewal Term, as the case may be, the parties agree that the Minimum Annual Performance Requirement for the ensuing one (1) year period will automatically be set at the levels agreed to in the previous Term, and that in such circumstances either party may terminate this Agreement upon sixty (60) days written notice to the other party."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 3.4. | |
| 35. Contract No. 4 remains valid and on-going, Holista has acknowledged such, and ProImmune takes the same position.<br><br>Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 246:3-11, 246:23-247:3; Dr. Crum Decl. ¶ 17d.i. | |
| 36. If Contract No. 4 were terminated, Holista "may sell stocks of the Product for which it has accepted orders from customers prior to the date of termination[.]"<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 14.1.3. | |

| | |
|---|---|
| 37. Holista is continuing to sell Product to pharmacies, whjch is outside of Contract No. 4's Initial Period, and not based on purchase orders accepted during Contract No. 4's Initial Period.<br><br>Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 253:19-254:20.]; Dr. Crum Decl. ¶ 4, Ex. C, section 13.1., Schedule 1, item 4. | |
| 38. Contract No. 4 states "4500 kilograms (2,000 January 2019 and 2,500 February 2019) will be considered 2018 purchases because of the delayed contract start date."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, schedule 3, ¶ 3. | |
| 39. Holista has failed to make any purchases for 2019, 2020, or the first five months of 2021.<br><br>Dr. Crum Decl. ¶ 17.d.iv-vi. | |
| 40. ProImmune has been damaged by Holista's failure to meet minimum annual purchase requirements under Contract No. 4 for the past two years and five months in the amount of ▮▮▮▮▮▮ Those damages remain on-going.<br><br>Dr. Crum Decl. ¶ 17.d.ii-iiiv. | |

## HOLISTA'S AFFIRMATIVE DEFENSE OF WAIVER

| Undisputed Material Fact and Supporting Evidence | Holista's Response |
|---|---|
| 41. Holista has alleged that "as evidence and exhibited by the parties' words, actions, written correspondence and course of | |

| | |
|---|---|
| conduct (implied and actual) over a five (5) year period, neither would enter into any contract extension/restatement, or new agreement, until the then existing or expired contract's terms and conditions were deemed fully satisfied or waived by ProImmune."<br><br>ECF # 26, Second Amended Answer and Counterclaims, Counterclaims ¶ 2. | |
| 42. ProImmune repeatedly reminded Holista of its obligation to meet the Minimum Monthly Performance Requirements under the Contracts.<br><br>Dr. Crum Decl. ¶¶ 6-9, Ex. D; Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo.] at 112:6-17; 121:22-122:9, 123:4-17, 141:3-8, 164:24-165:3, 168L22-169:1, 180:18-181:10, 212:5-8. | |
| 43. Holista understood and agreed that it was to come compliant with its Minimum Monthly Performance Requirements under the Contracts.<br><br>Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 76:6-19, 81:82:17-83:4, 123:4-17, 97:1-6, 123:4-17, 124:16-125:6, 181:19-182:6. | |
| 44. Holista understood and agreed that ProImmune was not waiving Holista's obligation to meet the Minimum Monthly Performance Requirements under the Contracts.<br><br>Abbott Decl. ¶ 3, Ex.B [Dr. Rajen Depo. II] at 76:6-19, 81:82:17-83:4, 123:4-17, 97:1-6, 123:4-17, 124:16-125:6, 181:19-182:6. | |

## COUNTERCLAIM CAUSE OF ACTION NO. 1 – BREACH OF CONTRACT AGAINST PROIMMUNE

| Undisputed Material Fact and Supporting Evidence | Holista's Response |
|---|---|
| 45. Holista alleges that it paid ProImmune "approximately $300,000…for the delivery of contract-conforming "Product"." <br><br> ECF #26, Second Amended Answer and Counterclaims, Counterclaims ¶ 18. | |
| 46. Holista alleges that ProImmune "breached, *inter alia*, §§ 4.1, 8.2, 8.3, 9.1.1(ii) and (iii), and 9.1.2 of the agreement by outright failing to deliver the Product paid for by Holista and/or delivering objectively non-conforming, defective product. <br><br> ECF #26, Second Amended Answer and Counterclaims, ¶ 20. | |
| 47. ProImmune delivered Product to the Pick-up Address as required by Contract No. 4 and informed Holista that Product was ready for pick up. <br><br> Dr. Crum Decl. ¶ 15, Ex. F. | |
| 48. Holista never picked up the Product. <br><br> Dr. Crum Decl. ¶ 15. | |
| 49. Holista admitted that the Product supplied by ProImmune conformed to Contract No. 4's specifications. | |

| | |
|---|---|
| Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 225:17-23, 228:4-9, 230:20-24, 231:8-15, 236:21-237:7. | |
| 50. Contract No. 4 required Holista to "Holista shall inspect all Product within twenty-one (21) days from the Pick-Up Date to ensure the Product meets the Acceptance Requirements. Any Product that does not comply with the Acceptance Requirements may be rejected by Holista or its customers, in which case ProImmune shall at its own cost and expense collect the Product so rejected at the Pick-up Address."<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 4.1. | |
| 51. Holista never rejected any Product under Contract No.4.<br><br>Dr. Crum Decl. ¶ 12. Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 89:21-24, 184:2-9 | |
| 52. Holista's complaints as to Product conformity to specifications were based on Product picked up by Holista months earlier.<br><br>Dr. Crum Decl. ¶ 13, Ex. E. | |
| 53. ProImmune had no obligation under section 4.1 of Contract No. 4, until Holista rejected Product.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 4.1 | |
| 54. Holista was not entitled to replacement or reimbursement of any Product returned by any customer, unless it was done in accordance with the Returns Policy and the timeframe set forth in Clause 4.1, | |

| | |
|---|---|
| unless ProImmune consented to the replacement or reimbursement in writing.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, sections 8.2 and 8.3. | |
| 55. ProImmune never consented in writing to any replacements or returns of Product for Contract No. 4.<br><br>Dr. Crum Decl. ¶ 12. | |
| 56. ProImmune warranted the Product supplied was "at the time of the Pick-up Date…of satisfactory quality, free of residuals and contaminants, and fit in all respects or the purpose(s) for which the Product is intended to be used and shall comply with all and any specifications provided by ProImmune for such Product."<br><br>Dr. Crum Decl. ¶4, Ex. C, section 9.1(i). | |
| 57. ProImmune warranted that the Product supplied "at the time of the Pick-up Date, conform[ed] to the ingredient of such Product as described in the label, package inserts and packaging, and is in all respects suitable for distribution and/or retailing to the customer in compliance with applicable laws, regulations and administrative requirements in the United States and Canada[.]"<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 9.1.(ii). | |
| 58. ProImmune further warranted that "[a]ll literature and information supplied by ProImmune in relation to the product, including the resources Materials are true, complete and accurate in every respect[.]" | |

| | |
|---|---|
| Dr. Crum Decl. ¶ 4, Ex. C, section 9.1.2. | |
| 59. It is impossible for Holista to have tested any Product under Contract No. 4 because it never picked up any Product under Contract No. 4.<br><br>Dr. Crum Decl. ¶ 15. | |
| 60. ProImmune was not responsible for shipping the Product to Holista.<br><br>Dr. Crum Decl. ¶ 4, Ex. C, section 4.1-4.3; Abbott Decl. ¶ 2, Ex. A [Rajen Depo. I] at 137:21-23. | |
| 61. ProImmune met all mesh size requirements under Contract No. 4.<br><br>Abbott Decl. ¶ 3, Ex. B [Rajen Depo. II] at 237:2-7. | |
| 62. ProImmune sold the approximately $300,000 worth of Product that Holista paid for when Holista did not pick up the Product from the Pick-up Address to avoid the expiration of the Product and to mitigate any potential losses.<br><br>Dr. Crum Decl. ¶ 15. | |
| 63. ProImmune has always been willing and able to supply Product to Holista according to Contract No. 4 and has never indicated otherwise.<br><br>Dr. Crum Decl. ¶ 16. | |
| 64. Holista acknowledged that Contract No. 4 remains valid and pending, and that neither party has terminated Contract No. 4. | |

| | |
|---|---|
| Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 246:3-11, 246:23-247:3. | |

# COUNTERCLAIM CAUSE OF ACTION NO. 2 – BREACH OF EXPRESS WARRANTY AGAINST PROIMMUNE

| **Undisputed Material Fact and Supporting Evidence** | **Holista's Response** |
|---|---|
| 65. Holista has alleged that "as averred above, [ProImmune] issued, promised and conveyed Express Warranties to [Holista]."<br><br>Second Amended Answer and Counterclaims, Counterclaim Count II, ¶ 24. | |
| 66. The only warranties averred to were Contract No. 4 sections 9.1.1(i), 9.1.1(ii), and 9.1.2.<br><br>Second Amended Answer and Counterclaims, Counterclaims Count I, ¶ 20; Dr. Crum Decl. ¶ 4, Ex. C, sections 9.1.1(i) and (ii), 9.1.2. | |
| 67. Holista does not allege that ProImmune breached any warranties of Section 9 in Contract No. 4.<br><br>*See generally,* Second Amended Answer and Counterclaims, Counterclaims Counts I and II. | |
| 68. As to the only Product that Holista questioned, Holista admitted that the Product supplied fully conformed to the Contract specifications. | |

| | |
|---|---|
| Dr. Crum Decl. ¶ 13, Ex. E; Abbott Decl. ¶ 3, Ex. B [Dr. Rajen Depo. II] at 225:17-23, 228:4-9, 230:20-24, 231:8-15, 236:21-237:7. | |
| 69. Holista never picked up the Product.<br><br>Dr. Crum Decl. ¶ 17 | |
| 70. Holista did not pickup Product under Contract No. 4 and cannot complaint that ProImmune breached a warranty for Product that it did not obtain, and therefore could not test whether the Product conformed or not.<br><br>Dr. Crum Decl. ¶ 15. | |
| 71. ProImmune's manufacturer UST confirmed that the Product Holista complained about, lot 1015811, did in fact conform to all required specifications.<br><br>*See generally,* Declaration of Steven Chadwick. | |

Dated: June 14, 2021              **BROWN NERI SMITH & KHAN, LLP**


By:   s/ Ryan Abbott
         Ryan Abbott

11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
(310) 593-9890

*Attorneys for Plaintiff/Counterclaim Defendant,*
The ProImmune Company, LLC

# PROOF OF SERVICE

      I am a resident of the State of New York, over the age of eighteen years, and not a party to the within action. My business address is: Brown, Neri Smith & Khan LLP, 11601 Wilshire Blvd., Suite 2080, Los Angeles, CA 90025. On the date below, I served the document(s) as follows:

- **DECLARATION OF STEPHEN G. CHADWICK IN SUPPORT OF PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT**

      ☒    **BY ELECTRONIC MAIL:** I caused such document(s) to be electronically mailed in PDF format as an e-mail attachment to each addressee for the above-entitled case. The transmission was complete and confirmed. A copy of the transmittal e-mail will be maintained with the original document(s) in our office.

To the addresses on the following address:

    Natraj S. Bhushan, Esq.
    Turturro Law P.C.
    1602 McDonald Ave.
    Brooklyn, NY 11230
    E: natraj@turturrolawpc.com

    Attorneys for Defendant/Counterclaim Plaintiff,
    Holista Colltech, Ltd.

      I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on June 14, 2021, at Albany, NY.

_____
Rowennakete P. Barnes