UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
THE PROIMMUNE COMPANY, LLC,

                                                            C.A. No. 7:20-cv-01247 (KMK)

                  Plaintiff,

            - against -

HOLISTA COLLTECH LTD. and DOES 1-50, inclusive,

                  Defendants.
-----------------------------------------------------------------x
HOLISTA COLLTECH LTD.,

                  Counterclaim Plaintiff,

            - against -

THE PROIMMUNE COMPANY, LLC,

                  Counterclaim Defendant.
-----------------------------------------------------------------x

## DECLARATION OF DR. RAJEN MANICKA

I, Rajen Manicka, declare the following under penalty of perjury:

        1.     I am the Chief Executive Office for the Defendant-Counterclaim Plaintiff Holista Colltech Ltd. ("Holista") herein and, as such, I have personal knowledge of the facts as stated below and am fully familiar with the facts of this case and would testify as follows if called as a witness.

        2.     I submit this Declaration in Support of Holista's motion for partial summary judgment on the issue of liability as to Holista's counterclaims for breach of contract (Count I of the Second Amended Answer with Counterclaims) and breach of express warranty (County II) against Plaintiff-Counterclaim Defendant The ProImmune Company, LLC ("ProImmune").

1

3. As set forth in the Second Amended Answer with Counterclaims, ProImmune and Holista entered into several distribution agreements - a final one of which was entered into on September 1, 2018 ("Agreement").

4. A true and correct redacted[1] copy of this Agreement is annexed hereto as **Exhibit A**.

5. Pursuant to the express terms of the Agreement, and in reliance upon the Contractual Warranties and Certificate Warranties (as those terms are defined below), Holista paid approximately $311,850.00 to ProImmune (through the course of three separate payments) for delivery of approximately three (3) tons of conforming Product.

6. Annexed as an addendum to the verified interrogatories served in this action, which I prepared from Holista's financial ledgers that are maintained in the ordinary course of its business, the sum total that Holista made to ProImmune in connection with purchases of Product under this Agreement amounted to $311, 850.00. A true and correct copy of the Verified Interrogatories are annexed hereto as **Exhibit B**.

7. Nevertheless, as explained below, Holista never picked up, or even received most of the Product it paid for due to long-standing issues with the packaging of the Product and the quality and consistency of the Product. Indeed, Dr. Crum admitted to selling off a large portion of the Product that Holista had paid for to a separate company rather than address the long-standing issues that Holista had raised throughout the term of this Agreement and prior ones.

8. In any event, as per the express terms of the 2018 Contract (e.g., §§ 4.1, 8.2, and 8.3) the Product to be delivered to Holista' Pick-Up's address was to conform to the

---

[1] Pursuant to the parties agreement and the court's sealing order, this Agreement is partially redacted to eliminate confidential information that may affect ProImmune's business dealings.

2

specifications set forth in the Contract (e.g., §1.1.16 and item 2 of Schedule 1), which ProImmune warranted (§§9.1.1. (ii) and (iii), 9.1.2.) ("Contractual Warranties").

9. Moreover, each shipped batch of Product to Holista was separately accompanied by a Certificate of Analysis ("Certificate Warranties"), which additionally warranted that the Product within a shipped batch conformed to the exact specifications of ProImmune's Product's patent.

10. As a scientist with a pharmacy background, it should be noted that it is virtually impossible to discern any problems with the formulaic consistency of the Product unless one receives and tests the Product in a lab since it is delivered as an edible white powder.

11. Moreover, prior to entering into this Agreement, Dr. Crum was well aware that Holista had its own customers (i.e., Qnet/ChakraWeCare) who were literally being immediately reshipped the same Product Holista has purchased. Accordingly, it was imperative that the Product Holista purchased was properly packaged and conforming to the specifications in the Certificate and Contractual Warranties.

12. For example, in an August 23, 2017 email I wrote to Dr. Crum about ensuring that ProImmune's manufacturer, UST, was using appropriate packaging for the shipment of the powdered Product to Holista since there had been numerous prior complaints, which were now being raised by Holista' end customer – i.e. Qnet. Attached hereto as **Exhibit B** is a true and correct copy of this email.

13. Thus, in complete reliance on ProImmune's Contractual Warranties and Certificate Warranties (collectively referred to as the "Express Warranties") along with the parties' previous course of conduct, Holista made three purchases of Product (as noted above), a small portion of which it picked up in reliance on these Express Warranties, and then reshipped

to its customers "as is". Nevertheless, it turned out that this Product was, in fact, non-conforming and a different Product altogether.

14. In fact, throughout 2019, Holista outlined several material breaches of the parties Agreement, which included delivery of non-conforming Product (a breach of the Express Warranties); failure to ensure properly packed Product at the Pick-Up location; and defectively shipped goods. These breaches were communicated usually by me through the course of several emails or phone calls – several of which even included copies of the test results showing the deficiency of the amino acid content of the Product.

15. For example, one of my employees complained about the carboard packaging in which ProImmune shipped us Product just days after entering into the Agreement; another packaging complaint by Holista's customer, ChakraWeCare which I forwarded to ProImmune on March 28, 2019; and several complaints about the amino acid content of the Product were raised with ProImmune and its manufacturer, UST, from August 2019 to the end of October 2019 at which point ProImmune just ceased all communications with Holista despite having $311,850.00 of Product that Holista had paid for – the bulk of which was never even shipped to Holista. A true and correct copy of these emails are annexed hereto as a composite document labeled **Exhibit C**.

16. As ProImmune's largest customer and someone that Dr. Crum had repeatedly promised that he would honor any return of deficiently packed Product or Product that I was dissatisfied with, the sum and substance of all this correspondence was inquiring about curing the status of the Product that was either delivered in breach of Express Warranties, or not delivered at all.

17. As to the defective Product delivered, a non-exhaustive list of the issues raised in this correspondence were the following: difference in texture, taste, color and amino acid content – each of which deviated from the 2018 Contract terms and were in breach of the Express Warranties. In fact, all of the foregoing was verified both by testing performed by Holista's customer and a separate independent analysis performed by an outside agent hired by Holista who each tested, unaltered Product and found it to be non-conforming. Moreover, the results of these findings were even shared with ProImmune and its third-party manufacture, UST Pharma. *See*, **Exhibit C**.

18. Furthermore, the email correspondence sent by me to ProImmune in late 2019 along with the few phone calls I had with Dr. Crum during this time made clear to ProImmune that its failure to deliver conforming Product or explain the discrepancies in Product consistency (with that which Holista was promised and already paid for) would result in further damages to Holista – namely, lost profits and damaged reputation in the form of cancellation of purchases of Product by Holista's customers.

19. And when confronted with these material breaches and discrepancy in Product variation, neither ProImmune nor its manufacturer explained or justified the quality discrepancy despite numerous attempts from Holista. In fact, the one ProImmune employee who was actually trying to work out a resolution to these very serious and material breaches of the Agreement, Nicholas Nash (ProImmune's Chief Financial Officer) was instructed by Dr. Crum to stop talking to us when the answers we were seeking were needed the most.

20. In short, with both the Product manufacturer (UST) and Mr. Nash ceasing all communication with us and, Dr. Crum refusing to get on the phone with us, Holista and its

customers were left in the dark as to any viable explanation as to why the ProImmune amino acid content was so low and/or how ProImmune intended to cure the material breaches.

21.    And this failure to cure and/or remedy the material breaches prolonged until December 2019 when Holista's external auditors sought to confirm with ProImmune as to how much Product inventory that Holista paid for that it was still owed (i.e., a large portion of the $311, 850.00). In response to this request, ProImmune simply denied the amount owed and countered with - for the first time during the course of our near five year relationship - threats to sue for breach of previous years distribution agreements despite Dr. Crum's expressed satisfaction (to me) with Holista's prior performance and minimum purchases made during each of the prior agreements entered into.

22.    In any event, to date ProImmune failed to cure any of their material breaches, and, in bad faith, now seeks damages in the instant action for breach of pre-2018 Agreement for which performance was already deemed waived, satisfactory and/or compliant based on the parties words, actions, course of conduct and customary practices.

23.    Moreover, as a direct result of ProImmune's uncured breach of the Express Warranties, Holista ultimately had to pay a substantial sum of money to its customers (like Qnet) for failure to timely supply them with conforming Product, which Holista would have otherwise supplied but for the aforementioned breaches of ProImmune.

24.    Based on the foregoing and those papers being submitted in further support of its motion, Holista has been damaged in an amount to be proven at trial, but estimated at no less than $311, 850.00 plus interest on it breach of contract claim as well as a sum to be determined at trial for ProImmune's breach of the Express Warranties.

I declare under penalty of perjury under the laws of the United States of America and

New York that the foregoing is true and correct.

Date: June 16, 2020
Petaling Jaya, Malaysia

Rajen Manicka