UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
THE PROIMMUNE COMPANY, LLC,

                                                                          C.A. No.  7:20-cv-01247 (KMK)

                              Plaintiff,

            - against -

HOLISTA COLLTECH LTD. and DOES 1-50, inclusive,

                              Defendants.
-------------------------------------------------------------------x
HOLISTA COLLTECH LTD.,

                           Counterclaim Plaintiff,

            - against -


THE PROIMMUNE COMPANY, LLC,

                           Counterclaim Defendant.
-------------------------------------------------------------------x


**DEFENDANT-COUNTERCLAIM PLAINTIFF HOLISTA COLLTECH LTD.'s MEMORANDUM OF LAW IN OPPOSITION TO PROIMMUNE'S MOTION FOR <u>SUMMARY JUDGMENT</u>**

Dated: Brooklyn, NY                             **TURTURRO LAW, P.C.**
    July 30, 2021                               By:<u>/s/Natraj S. Bhushan</u>
                                                                Natraj S. Bhushan
                                                                 1602 McDonald Avenue
                                                                 Brooklyn, NY 11230
                                                                Tel.: 718-384-2323
                                                                Email: Natraj@turturrolawpc.com
                                                               *Attorneys for Counterclaim Plaintiff*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ...................................................................................1

**BACKGROUND FACTS** ......................................................................................2-3

    A. Material Terms of Contract 1
    B. Material Terms of Contract 2
    C. Material Terms of Contract 4

**ARGUMENT**.............................................................................................................3

    I.    *Summary Judgment Standard*

    II.    *There Are Material Issues Of Fact Concerning ProImmune's Breach of Contract Claims/Holista's Affirmative Defenses Which Preclude Summary Judgment*

        A. Factual Issues Concerning Holista's Satisfactory Compliance, ProImmune's Waiver of Certain Provisions In Contract No. 1 and Contract 2's Terms, and ProImmune's Failure To Satisfy Conditions Precedent

        B. Factual Issues Concerning Holista's Defense of ProImmune's Prior Material Breach And/Or Repudiation of Contract 4/ProImmune's Failure To Comply With A Condition Precedent

        C. The Contracts Preclude ProImmune From Seeking Any Award of Lost Profits

**CONCLUSION** .........................................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                       **PAGES**

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)……………………………………..5

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986)……………………………5

*Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005)………………………….6

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 Case 1:16-cv-03534-KPF Document 53 Filed 07/17/18 Page 21 of 43 22 (1986) ………...6

*Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015)………………………...6

*In re M/V MSC FLAMINIA*, 339 F.Supp.3d 185, 241–242(S.D.N.Y. 2018)…………6

*Wells Fargo Bank N.A. v Sovereign Bank, N.A.*, 44 F Supp 3d 394, 403 (SDNY 2014)……………………………………………………………………………9

*Laguna Constr. Co. v. Carter,* 828 F.3d 1364, 1369 (Fed. Cir. 2016)………………..9-10

*Kuhbier v McCartney*, 239 F Supp 3d 710, 735 [SDNY 2017])……………………..10

*Merrill Lynch & Co. v. Allegheny Energy, Inc.,* 500 F.3d 171, 186 (2d Cir. 2007)....10

*Tenavision, Inc. v Neuman*, 45 NY2d 145, 150 (1978)………………………………11

**STATUTES**

F.R.C.P. Rule 56…..…………………………………………………….………… *passim*

UCC §2-313………………………………………………………………………….…..6

23 Williston on Contracts § 63:3 (4th ed.)……………………………………………10

Uniform Commercial Code, § 2-610, subd [c])………………………………………10

**OTHER AUTHORITIES**

White & Summers, Uniform Commercial Code, § 6-2………………………………11

# **PRELIMINARY STATEMENT**

Defendant-Counterclaim Plaintiff Holista Colltech, Ltd. ("Holista") respectfully submits this Memorandum of Law in opposition to the Plaintiff-Counterclaim Defendant, The ProImmune Company's ("ProImmune") motion for summary judgment on its first, second, and fourth causes of action, Holista's affirmative defense of waiver, and for summary judgment against Holista's causes of action for breach of contract and breach of express warranties.

Affording Holista all favorable inferences, it is evident that this Motion should be denied for four reasons:

*First*, there remain issues of fact as to whether ProImmune waived the minimum annual purchase requirements under Contract 1 and Contract 2, or alternatively, deemed Holista compliant with Contract 1 and Contract 2.

*Second*, even assuming, *arguendo*, that breach of the minimum annual required purchases under Contract 1 and Contract 2 was not waived by ProImmune and Holista was in breach, ProImmune still was contractually required to first serve a formal notice of breach to Holista in order to trigger its 30-day cure period. Having failed to even allege the existence of any "notice" document that would substantiate ProImmune's compliance with this condition precedent let alone submit any proof of the same in connection with this Motion, the branch of the Motion seeking judgment on ProImmune's first, second and fouth count should be denied and dismissed.

*Third*, as questions of fact exist as to ProImmune's prior material breach and/or repudiation of the terms of Contract 4, it is respectfully submitted that the Motion should be denied.

*Lastly,* ProImmune impermissibly seeks damages in the form of lost profits on its First, Second and Fourth Claims each of which is expressly prohibited by Contract 1, Contract 2, and Contract 4.

## BACKGROUND FACTS[1]

ProImmune and Holista entered into several distribution agreements, three of which are relevant to the discussion in this motion: the first, on March 16, 2015 ("Contract 1") ; the second, on June 2, 2016 ("Contract 2"); and, the fourth and final one of which was entered into on September 1, 2018 ("Contract 4", and together with Contract 1 and Contract 2,"Contracts"). Rajen Dec. at ¶ 3.

Pursuant to the terms of the Contracts, and in reliance upon the Contractual Warranties and Certificate Warranties (as those terms were defined in the Contracts), Holista agreed to purchase Immune Formulation 200® (the "Product") for supply to its Asian-based customers. In sum and substance, the essence of the Contracts was for ProImmune to supply Holista with Product that conformed to the various warranties and specifications indicated in each Contract so that Holista could, in turn, supply the Product to its customers. Rajen Dec. at ¶ 4.

Due to a myriad of compliance issues that ProImmune fell short in - for example, changes in the manufacturer used; issues with the mesh size of Product; changes in color and taste of Product; failure to properly package Product at the designated Pick-Up location, failure to assist in timely obtaining halal certificates, failure to ensure Product conformed to its contractual and

---

[1] The salient facts are taken from ProImmune's Rule 56. Statement ("USMF"), which includes Holista's Response to ProImmune's Rule 56.1 Statement ("Response") that was, in turn, adopted from admissible evidence proffered in the Declaration of Ryan Abbot, Declaration of Albert Crum, Declaration of Natraj S. Bhushan In Opposition, and Declaration of Rajen Manicka In Opposition ("Rajen Dec.").

express warranties – Holista did not meet the minimum purchase requirements under the Contracts. Rajen Dec. at ¶ 5.

A. *Material Terms of Contract 1*

It is undisputed that on March 16, 2015, the Parties entered into their first distribution agreement (USMF ¶ 1.) Under Contract No. 1, "Holista agree[d] to purchase…not less than the minimum quantities of Product required to meet the Minimum Monthly Performance Requirements." (ProImmune's Undisputed Statement of Material Facts ("USMF") ¶¶ 2-4.) The Minimum Monthly Performance Requirements for Holista under Contract No. 1 totaled 10,200 kg. (USMF ¶ 6.)

The other material terms of the Contract were as follows: that the Term of Contract 1 was for one year upon, which point it would expire. 13.1. This section goes on to say if Holista has complied with all the terms… the term can be extended for another year subject to a mutually agreed business plan and a further review of the minimum purchase requirements. Section 13.2 .

Section 13.4.1 outlines the notice and cure period for a material breach.

Section 13.5 expressly allows for the waiver of a breach of any provision of the contract by either Party.

Section 13. 6 expressly states that "neither Party shall have any claim against the other Party for any loss of profit, revenue, or consequential loss suffered or incurred by the first mentioned Party.

Section 14 *et seq.* makes clear that upon termination of Contract 1, the only monies for which Holista would be responsible for are unpaid outstanding invoice and all invoices to be rendered by ProImmune. In fact, section 14.1.5 reinforces this provision by limiting the parties obligations.

Lastly, Section 18 *et seq.* describes how all such notices (including section 13.4.1 notices of material breach) should be sent.

### B. Material Terms of Contract 2:

On June 2, 2016, the Parties entered into their second distribution agreement ("Contract No. 2"). (USMF ¶ 11.) Under Contract No. 2, Holista "agree[d] to purchase…. not less than the minimum quantities of Product required in order to meet the Minimum Annual Performance Requirements." (USMF ¶ 13.)

The other material terms of this contract were as follows: that the Term of Contract 1 was for one year upon, at which point it would expire. 13.1. This section goes on to say if Holista has complied with all the terms… the term can be extended for another year subject to a mutually agreed business plan and a further review of the minimum purchase requirements. Section 13.2 .

Section 13.4.1 outlines the notice and cure period for a material breach.

Section 13.5 of Contract expressly allows for the waiver of a breach of any provision of the contract by either Party.

Section 13. 6 of Contract 1 expressly states that "neither Party shall have any claim against the other Party for any loss of profit, revenue, or consequential loss suffered or incurred by the first mentioned Party.

Section 14 *et seq.* makes clear that upon termination of Contract 1, the only monies for which Holista would be responsible for are unpaid outstanding invoice and all invoices to be rendered by ProImmune. In fact, section 14.1.5 reinforces this provision by limiting the parties obligations.

Lastly, Section 18 *et seq.* describes how all such notices should be sent.

### C. *Material Terms of Contract 4:*

Holista's Contract No. 4 Minimum Annual Performance Requirements during the "Initial Period" of "One (1) year" was 12,000 kg. (USMF ¶ 27.)

The other material terms of this contract were as follows: that the Term of Contract 1 was for one year upon, at which point it would expire. 13.1. This section goes on to say if Holista has complied with all the terms… the term can be extended for another year subject to a mutually agreed business plan and a further review of the minimum purchase requirements. Section 13.2 .

Section 13.4.1 outlines the notice and cure period for a material breach.

Section 13.5 of Contract expressly allows for the waiver of a breach of any provision of the contract by either Party.

Section 13. 6 of Contract 1 expressly states that "neither Party shall have any claim against the other Party for any loss of profit, revenue, or consequential loss suffered or incurred by the first mentioned Party.

Section 14 *et seq.* makes clear that upon termination of Contract 1, the only monies for which Holista would be responsible for are unpaid outstanding invoice and all invoices to be rendered by ProImmune.

Lastly, Section 18 *et seq.* describes how all such notices should be sent.

## ARGUMENT

### I. *Summary Judgment Standard*

Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In reviewing a motion for summary judgment,

a court must "construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). But while the non-moving party is entitled to have all facts construed in its favor, it may not defeat summary judgment through a mere "show[ing] that there is some metaphysical doubt as to the material facts[,]" and must instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 Case 1:16-cv-03534-KPF Document 53 Filed 07/17/18 Page 21 of 43 22 (1986) (internal quotation marks and citation omitted). Ultimately, it matters not whether the Court believes the evidence to favor one side or another; rather, the Court must ascertain whether a reasonable jury could find for the non-moving party on the evidence in the record. *Jeffreys*, 426 F.3d at 553. Where a jury could not so find, "there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587. Importantly, however, "[t]he function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015).

### II. There Are Material Issues Of Fact Concerning ProImmune's Breach of Contract Claims/Holista's Affirmative Defenses Which Preclude Summary Judgment

"[I]n order to establish a claim for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant, (2) performance of the plaintiff's obligations under the contract, (3) breach of the contract, and (4) damages to the plaintiff caused by the defendant's breach." *In re M/V MSC FLAMINIA,* 339 F.Supp.3d 185, 241–242(S.D.N.Y. 2018)**.** In this case, the existence of the three contracts at issue in this Motion is undisputed; however, ProImmune's waiver of the minimum purchase

6

requirements under the contract and its full performance with all conditions precedent to bringing this suit for breach of contract is disputed. Additionally, Holista maintains that even assuming, *arguendo*, on a finding in Plaintiff's favor as to the elements of full performance and breach by Holista (which would be contrary to reading the evidence in a light most favorable to Holista as the non-movant), ProImmune still cannot demonstrate that, as a matter of law, it can recover lost profits.

### A. Factual Issues Concerning Holista's Satisfactory Compliance, ProImmune's Waiver of Certain Provisions In Contract No. 1 and Contract 2's Terms, and ProImmune's Failure To Satisfy Conditions Precedent

i. *Holista's Satisfactory Compliance/Sixth Affirmative Defense of Waiver*

With respect to Contract 1 and Contract 2, Dr. Rajen Manicka (Holista's CEO) states that "Dr. Crum, who was (and still is) ProImmune's CEO, waived any strict compliance with the annual minimums set forth in Contract 1 and Contract 2" and that "[t]his waiver was effectuated through Dr. Crum's discussions with me during our calls, several emails exchanged between the parties, and evidenced by the course of the parties' custom and dealings in entering into new, subsequent distribution contracts rather than ProImmune claiming Holista was in breach." Notably, the two contracts do allow for waiver of the provisions. *See*, section 13.5 of Contract 1 and Contract 2.

Dr. Crum readily concedes this understanding of the parties in his own Declaration: "ProImmune entered into Contract No. 2 and Contract No. 4 when Holista had outstanding minimum purchase requirements that it was not compliant with…" (Crum Declaration at ¶7) as well as his deposition testimony. In particular, **Dr. Crum admits that Contract 1 was "renewed" by mutual consent despite Holista's non-compliance with the annual contract requirement under Contract 1 (Tr. at pp. 34-36).**

7

Significantly, **the term "renewal" at the expiration of Contract 1 and Contract 2 was reserved to instances where Holista's performance under the contract was compliant**. *See*, Section 13.2 of the Contract 1 and Contract 2. This contractual language (among other things) makes this case factually distinguishable than that of *Seven-Up Bottling Co. (Bangkok), Ltd. v. PepsiCo, Inc.,* 686 F.Supp. 1015, 1023 (S.D.N.Y. 1988).

Here, as Dr. Rajen makes clear in his Declaration, consistent with the "renewal" provision and waiver of the minimum annual purchases requirement, the parties exchanged a mutually acceptable business plan and entered into another one year agreement (i.e., Contract 2). Thus, "at minimum, there are issues of fact concerning the waiver defense/ProImmune's satisfactory take on Holista's compliance with Contract 1." Rajen Dec. at 8 ¶ and Ex. 1.

*ii. Holista's Seventh Affirmative Defense of Condition Precedent*

To the extent that the breach of the minimum purchase provision of Contract 1 and Contract 2 was not deemed waived (an issue that is factually disputed), then, it is clear on the record before the Court that **ProImmune failed to comply with a certain condition precedent** – namely, serving formal notice of breach, waiting out the 30-day cure period, and then, commencing an action seeking breach of Contract 1 and Contract 2. Indeed, **the record is devoid of any such notice of breach** and, ProImmune cannot submit one in any reply papers.

Under New York law, which governs the instant dispute, "a condition precedent is an act or event which must occur before another party's duty to perform its promise arises." *LaSalle Bank Nat. Assoc. v. Citicorp Real Estate, Inc.,* No. 02 Civ. 7868 (HB), 2003 U.S. Dist. LEXIS 12043, at *14 (S.D.N.Y. July 16, 2003)*. "To make a provision in a contract a condition precedent, it must appear from the contract itself that the parties intended the provision so to operate." *Torres v. D'Alesso,* 80 A.D.3d 46, 57, 910 N.Y.S.2d 1 (N.Y. App. Div. 2010) (quoting

8

22 N.Y. Jur. 2d, Contract § 262). "[A] contractual duty ordinarily will not be construed as a condition precedent absent clear language showing that the parties intended to make it a condition." *Unigard Sec. Ins. Co. v North Riv. Ins. Co., 79 N.Y.2d 576, 581, 594 N.E.2d 571, 584 N.Y.S.2d 290* (N.Y. 1992). "The interpretive preference favoring construction of contractual language as embodying a promise or a constructive condition rather than an express condition, however, cannot be employed if the occurrence of the event as a condition is expressed in unmistakable language, or where the event is within the obligee's control or the circumstances indicate that it has assumed the risk." *Bank of N.Y. Mellon Trust Co. v. Morgan Stanley Mortg. Capital,* No. 11 Civ. 0505 (CM)(GWG), 2013 U.S. Dist. LEXIS 87863, at *44-45 (S.D.N.Y. June 19, 2013) (internal quotation marks omitted).

Applied here, Section 13.4.1 of Contract 1 and Contract 2 required the party claiming breach to serve written notice and afford the breaching party 30 days to cure. Thus, Defendant's obligation to remedy any breach under those two contracts t is triggered exclusively by receipt of notice, and not also by discovery, which is significant since this Court has repeatedly held that such notices fall under the purview of the "condition precedent" label. *See*, *Wells Fargo Bank N.A. v Sovereign Bank, N.A.*, 44 F Supp 3d 394, 403 [SDNY 2014]) (collecting cases).

As ProImmune failed to comply with a condition precedent under Contract 1 and Contract 2, this branch of the Motion should be denied and these claims should be dismissed.

**B.** ***Factual Issues Concerning Holista's Eighth Defense of ProImmune's Prior Material Breach And/Or Repudiation of Contract 4/ProImmune's Failure To Comply With A Condition Precedent***

Prior material breach is a federal common law defense asserted when a party breaches a contract after another party has already breached the same contract." *Laguna Constr. Co. v. Carter,* 828 F.3d 1364, 1369 (Fed. Cir. 2016). The Restatement (Second) of Contracts states that

9

"[i]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." *See*, *Kuhbier v McCartney*, 239 F Supp 3d 710, 735 [SDNY 2017]). Additionally, "[t]he determination whether a material breach has occurred is generally a question of fact." 23 Williston on Contracts § 63:3 (4th ed.); *accord Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d Cir. 2007)* ("The issue of whether a party has substantially performed is usually a question of fact and should be decided as a matter of law only where the inferences are certain.")

Applied here, **there is no dispute that after Holista entered into Contract 4, it performed by paying ProImmune the sum of $311,850.00 for Immune Formulation 200 (Product) – "a large portion" of which it never picked up or received due to numerous packaging complaints as well as complaints about receipt of non-conforming Product, which were never cured**. Rajen Dec. at 12.

In particular, Holista averred that ProImmune materially breached (a), section 3.6 of Contract 4 by failing to "deliver the [conforming] Product" to the Pick-Up Address within the time stipulated by Holista; (b), section 4.1 (return of rejected Product by Holist or its customers that does not comply with Acceptance Requirements); and (c), section 9.1.1(ii) (Product being of satisfactory quality …and complies with all and any specification provided by ProImmune for such Product).

Furthermore, "with both the Product manufacturer (UST) and Mr. Nash ceasing all communication with us and, Dr. Crum refusing to get on the phone with us, Holista and its customers were left in the dark as to any viable explanation as to why the ProImmune amino acid

10

content was so low and/or how ProImmune intended to cure the material breaches. Rajen Dec. at 20.

Based on the foregoing, it is evident that ***there remains a material issue of fact as to Holista's defense of ProImmune's prior material breach of contract claim, which warrants denial of the motion.***

Moreover, it should be further noted ***that this set of facts*** when analyzed under the UCC and New York Court of Appeal case law interpreting the same, ***can also be reasonably construed by a finder of fact that there was a disavowal of Contract 4*** – i.e., an act of anticipatory repudiation (see White & Summers, Uniform Commercial Code, § 6-2, p 172) - which would eliminate the need for further performance by Holista (see Uniform Commercial Code, § 2-610, subd [c]). *Tenavision, Inc. v Neuman*, 45 NY2d 145, 150 (1978).

Additionally, Holista adopts the arguments of condition precedent set forth in Point A, iii (above) and states that ***Contract 4 also required ProImmune to comply with the condition precedent of serving notice of breach in the manner and method outlined by the Contract. Having failed to submit any proof of compliance with this requirement, which in turn would trigger Holista's 30-day cure period, ProImmune's motion must be denied in addition to dismissal of this claim for which proper notice has not been given (i.e. Fourth Cause of Action).***

C. <u>**The Contracts Preclude ProImmune From Seeking Any Award of Lost Profits**</u>

As stated in the Background Facts section of this memo, section 14 *et seq.* of each of the Contracts makes clear that the only monies for which Holista would be responsible for (assuming it was served with proper notice) are unpaid outstanding invoices as well all invoices to be rendered by ProImmune.

Applied here, ProImmune makes clear that it is arguing for expected "profits", which are precluded by the language of the Contract 1, Contract 2, and Contract 4. *See*, ProImmune's Memo of Law at p. 13.

Moreover, as there are no "Invoices" proffered in connection with this Motion, ProImmune's motion should be denied and the Complaint's First, Second and Fourth Causes of Action should be dismissed for failure to plead/prove damages that are actually recoverable in this litigation.

## CONCLUSION

In conclusion, for all the foregoing reasons, it is respectfully requested that this Motion should be denied in its entirety and Plaintiff's First, Second and Fourth Causes of Action dismissed.

Dated: Brooklyn, NY
      July 30, 2021

**TURTURRO LAW, P.C.**
By:/s/Natraj S. Bhushan
Natraj S. Bhushan
1602 McDonald Avenue
Brooklyn, NY 11230
Tel.: 718-384-2323
Email: Natraj@turturrolawpc.com
*Attorneys for Holista*