Ryan B. Abbott (5053673)
 ryan@bnsklaw.com
Rowennakete P. Barnes (5528955)
 kete@bnsklaw.com
**Brown Neri Smith & Khan, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff/Counterclaim-Defendant,*
The ProImmune Company, LLC

| | |
|---|---|
| THE PROIMMUNE COMPANY, LLC, a Delaware limited liability company;<br><br>　　　　　Plaintiff,<br>v.<br><br>HOLISTA COLLTECH LTD., an Australian corporation; and DOES 1-50, inclusive;<br><br>　　　　　Defendants. | Case No.: 7:20-cv-01247-KMK |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S**

**EVIDENTIARY OBJECTIONS TO THE DECLARATION OF NATRAJ S. BHUSHAN**

**SUBMITTED IN OPPOSITION TO PROIMMUNE'S**

<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff/Counterclaim-Defendant The ProImmune Company, LLC ("ProImmune") submits the following objections to the declaration of Natraj Bhushan submitted in opposition to ProImmune's motion for summary judgment.

## PLAINTIFF'S EVIDENTIARY OBJECTIONS

| Bhushan Decl. ¶ | Plaintiff's Objections | Ruling |
|---|---|---|
| ¶ 2i: "*The Deposition Testimony of Dr. Crum Make Clear That There Remain Numerous Issues Of Fact Concerning Holista's Alleged Breach of Contract 1, Contract 2, and Contract 4 As Well As Its Affirmative Defenses of Waiver and Condition Precedent.*" | Best Evidence Rule [Fed. R. Evid. 1002]; Improper Opinion Testimony [Fed. R. Evid. 701]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]. | |
| ¶ 4: The salient excerpts in the Dr. Crum transcript are as follows:<br>• Dr. Crum is the sole member of ProImmune (Tr. at pp.10 and 11);<br>• *Noone at ProImmune is as familiar with the science underlying the Immune Formulation 200 ("Product") as Dr. Crum (Tr. at p.15);*<br>• *Dr. Crum does have recollection of Holista making complaints about the very essence of the Product – namely, its stability and duration of functionality (Tr. At p.13-14);*<br>• *ProImmune's manufacturers relied on Dr. Crum for packing and manufacturing instruction (e.g., Tr. at p. 32);*<br>• *Dr. Crum admits that Contract 1 was "renewed" by mutual consent* | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Best Evidence Rule [Fed. R. Evid. 1002]; Improper Opinion Testimony [Fed. R. Evid. 701]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; misstates testimony. | |

1

- *despite Holista's non-compliance with the annual contract requirement under Contract 1 (Tr. At pp. 34-36).*

- Dr. Crum was tasked of handling distributor and customer complaints about the Product (Tr. at p 44);

- ProImmune provided input to their manufacturers about Product rations and specific ingredients for the Certificate of Analysis (Tr. at pp. 47-48);

- *At a certain point during the ProImmune-Holista relationship, due to packing "complaints", ProImmune "offered" to pack Product in "blue barrels" (Tr. 51);*

- As early as August 23, 2017, Dr. Crum was made aware, in writing, by Dr. Rajen (Holista's CEO) that UST (ProImmune's third manufacturer it used to make and pack Product) "had [a] very serious problems" with packing and documenting the Product, which in turn, would make Holista look "very bad" with its customers like Qnet. (This testimony was in reference to the email annexed as Exhibit B to the Declaration of Rajen Manike.)

- *Dr. Crum admits that Holista entered into a distribution agreement with ProImmune on September 1, 2018; the manufacturer for the Product during the term of this agreement was UST, which had to "provide the Product in a legally and scientifically satisfactory way"; and, Holista was instructed to not pick up the Product if they were dissatisfied.* (Tr. at pp. 82-84, 98).

- *Despite ProImmune acknowledging that Holista paid for $311, 650.00 worth of Product, most was never*

2

- *scheduled for pickup "because there were complaints."* (Tr. at pp. 87-88).

- Dr. Crum admits that just three days after ProImmune entered into the fourth agreement with Holista, it received a complaint from Holista about broken packaging and leaking Product, which he felt was the obligation of ProImmune to address even though these packing defects were noticed only after the point of pickup (Tr. at pp. 90-92).

- *Dr. Crum admits to receiving another indirect packing complaint from ChakraWeCare, one of Holista's customers, in regards to ProImmune's deficient packaging for a dietary supplement on March 28, 2019*. (*Tr. at pp. 93- 97*).

- *Dr. Crum admits to receiving an August 22, 2019 email from Holista's customer, ChakraWeCare, complaining about the Product's amino acid content, which was parroted once more by Dr. Rajen to ProImmune in the same email thread; Dr. Crum further admitted that a 50% reduction in the amino acid content would alter the Product to the point where "[i]t would not be the same product"* (Tr. at p.100-102) *and that the only way to discern the amino acid content would be to "test it" in a lab* (Tr. at p. 103).

- Dr. Crum testified that there would be no reason that the amino acid content would reduce on its own over time. (Tr. at p.110).

- *Dr. Crum admits to receiving an email, dated October 14, 2019, and another email dated, October 20, 2019, wherein Dr. Rajen complains about not receiving any material follow up to his questions to UST about the Product's amino acid*

3

| | | |
|---|---|---|
| *deficiency and inconsistency first raised in August 2019. (Tr. At pp.118-123).*<br><br>• *Dr. Crum admits a "large portion" of the approximate "$300,000.00" of Product that Holista paid for and did not pick up due to unresolved complaints about packing or other quality/consistency was ultimately sold by ProImmune to non-party, Three Aminos in March 2020. (Tr. at pp. 126-128).* | | |
| ¶4.ii.: "*The Deposition Testimony of Mr. Nash Makes Clear That ProImmune Had No Intention of Curing Its Material Breach of Contract 4 And Instead, Repudiated Contract 4, Which Excused Further Performance From Holista*" | Best Evidence Rule [Fed. R. Evid. 1002]; Improper Opinion Testimony [Fed. R. Evid. 701]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; misstates testimony. | |
| ¶ 6: "The salient excerpts in the Nash transcript are as follows:<br><br>• Nash was an advisor to Dr. Crum and then a "cyber CFO" to Proimmune; *Nash has no science background*. Tr. at p. 8.<br><br>• *Nash was given the title CFO approximately 2-3 years ago, which was during the Term of Contract 4*. Tr. at p. 9<br><br>• Nash recalls receiving a complaint from Dr. Rajen about the need for blue barrel packaging and for the Product to be delivered by ProImmune "undamaged". Tr. At p. 33.<br><br>• *Nash admits to having met Dr. Selvam of Qnet at a Harvard Club meeting between ProImmune and* | Best Evidence Rule [Fed. R. Evid. 1002]; Improper Opinion Testimony [Fed. R. Evid. 701]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; misstates testimony. | |

4

|  |  |  |
|---|---|---|
| *Holista*. Tr. at p. 34 and 37. at pp. 38-41, 43-44, 51.<br><br>• *Nash admits to knowledge of the amino acid deficiency complaint made by Qnet and Holista to ProImmune, which remained unresolved.* Tr. At pp. 38-41, 43-44, 51.<br><br>• Nash testified that it was his belief that Dr. Rajen was sending WhatsApp messages in later 2019 to him to obtain certain scientific information previously requested by email from Qnet/Holista because he assumed Dr. Rajen "hasn't got it" from Naomi Christman (ProImmune's Vice-President) or Dr. Crum (its CEO). Tr. at pp. 56-57.<br><br>• *Nash testified that ProImmune was aware that Dr. Rajen and Holista were under pressure with Qnet to explain to Dr. Selvam why there was a 50% deficiency in the amino acid content, which Qnet called "cheating". Despite these very serious breaches and requests by Dr. Rajen to get answers from ProImmune or its manufacturers, they did not come and Nash testified that even he was eventually instructed by Dr. Crum to cease communicating with Dr. Rajen. Tr. at pp. 62-71.* |  |  |

/ / /

/ / /

/ / /

5

6

Dated: August 20, 2021  **Brown Neri Smith & Khan, LLP**

By: <u>  s/ Ryan Abbott          </u>
       Ryan Abbott

11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
(310) 593-9890

*Attorney for Plaintiff/Counterclaim Defendant,*
The ProImmune Company, LLC

## PROOF OF SERVICE

I am a resident of the State of New York, over the age of eighteen years, and not a party to the within action. My business address is: Brown, Neri Smith & Khan LLP, 11601 Wilshire Blvd., Suite 2080, Los Angeles, CA 90025. On the date below, I served the document(s) as follows:

- **PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF NATRAJ S. BHUSHAN SUBMITTED IN OPPOSITION TO PROIMMUNE'S MOTION FOR SUMMARY JUDGMENT**

☒ **BY ELECTRONIC MAIL:** I caused such document(s) to be electronically mailed in PDF format as an e-mail attachment to each addressee for the above-entitled case. The transmission was complete and confirmed. A copy of the transmittal e-mail will be maintained with the original document(s) in our office.

To the addresses on the following address:

Natraj S. Bhushan, Esq.
Turturro Law P.C.
1602 McDonald Ave.
Brooklyn, NY 11230
E: natraj@turturrolawpc.com

Attorneys for Defendant/Counterclaim Plaintiff,
Holista Colltech, Ltd.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on August 20, 2021, at Albany, NY.

_____
Kete P. Barnes