Ryan B. Abbott (5053673)
 ryan@bnsklaw.com
Rowennakete P. Barnes (5528955)
 kete@bnsklaw.com
**Brown Neri Smith & Khan, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff/Counterclaim-Defendant,*
The ProImmune Company, LLC

| | |
|---|---|
| THE PROIMMUNE COMPANY, LLC, a Delaware limited liability company;<br><br>　　　　　Plaintiff,<br>v.<br><br>HOLISTA COLLTECH LTD., an Australian corporation; and DOES 1-50, inclusive;<br><br>　　　　　Defendants. | Case No.: 7:20-cv-01247-KMK |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S**

**EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DR. RAJEN MANICKA**

<u>**IN OPPOSITION TO PROIMMUNE'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff/Counterclaim-Defendant The ProImmune Company, LLC submits the following objections to the declaration of Dr. Rajen Manicka submitted in opposition to ProImmune's motion for summary judgment ("MSJ").

ProImmune objects generally to the declaration of Dr. Rajen Manicka on the grounds that it contradicts the sworn testimony he offered previously in deposition, and is therefore a sham affidavit. *See Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]. ProImmune has submitted the contradictory deposition testimony as Exhibits A and B to the declaration of Ryan Abbott in support of its MSJ (ECF 54).

## PLAINTIFF'S EVIDENTIARY OBJECTIONS

| Manicka Decl. ¶ | Plaintiff's Objections | Ruling |
|---|---|---|
| ¶ 4: "Pursuant to the terms of the Contracts, and in reliance upon the Contractual Warranties and Certificate Warranties (as those terms were defined in the Contracts), agreed to purchase Immune Formulation 200® (the "Product") for supply to its Asian-based customers. In sum and substance, the essence of the Contracts was for ProImmune to supply Holista with Product that conformed to the various warranties and specifications indicated in each Contract so that Holista could, in turn, supply the Product to its customers." | Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Best evidence rule [Fed. R. Evid. 1002]; Improper Opinion Testimony [Fed. R. Evid. 701]. | |
| ¶ 5: "To that end, it should be noted that to the best of my knowledge, ProImmune did not manufacture Product unless the Product had been already paid for (as the Contracts required); and Product that was sold to Holista was never customized in any way, shape of form, for Holista's benefit. In other words, the same Product that was manufactured for Holista was the same Product that could be sold, transferred, or assigned to any other distributor of ProImmune Product." | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Relevance [Fed. R. Evid. 403]. | |

1

| | | |
|---|---|---|
| ¶ 6: "Nevertheless due to a myriad of compliance issues that ProImmune fell short in - for example, changes in the manufacturer used; issues with the mesh size of Product; changes in color and taste of Product; failure to properly package Product at the designated Pick-Up location, failure to assist in timely obtaining halal certificates, failure to ensure Product conformed to its contractual and express warranties – Holista did not meet the minimum purchase requirements under the Contracts. Examples of the foregoing can be found in the emails that Holista sent to ProImmune over the relevant contract years, which are being provided to the Court in the composite exhibit annexed hereto as **Exhibit 1**." | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Relevance [Fed. R. Evid. 403]; Best Evidence Rule [Fed. R. Evid. 1002]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."] | |
| ¶ 7: These issues lingered throughout the time period in which the Contracts were in effect (2015-2019) and, for these reasons, Dr. Crum, who was (and still is) ProImmune's CEO, waived any strict compliance with the annual minimums set forth in Contract 1 and Contract 2. This waiver was effectuated through Dr. Crum's discussions with me during our calls, several emails exchanged between the parties, and evidenced by the course of the parties' custom and dealings in entering into new, subsequent distribution contracts rather than ProImmune claiming Holista was in breach. Indeed, Dr. Crum readily concedes this understanding of the parties in his Declaration: "ProImmune entered into Contract No. 2 and Contract No. 4 when Holista had outstanding minimum purchase requirements that it was not compliant with…" Crum Declaration at ¶7. Further examples of the foregoing can be found in the emails that Holista sent to ProImmune over the relevant contract years, which are being provided to the Court in the | Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]; Hearsay [Fed. R. Evid 801]; Best Evidence Rule [Fed. R. Evid. 1002]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Doctrine of Completeness [Fed. R. Evid. 106].<br><br>No exhibit 2 was submitted with the Manicka Declaration. | |

2

| | | |
|---|---|---|
| composite exhibit annexed hereto as **Exhibit 2.** | | |
| ¶ 8: "Moreover, this understanding is reinforced by the fact that Dr. Crum never once sent Holista any formal notice of default (as required under the Contracts) indicating that Holista was ever in default or breach of the same. *See generally*, motion papers, which do not include any notice of default or breach of Contract 1 or 2; *see also*, Contract 1, Notice (Section 18 *et seq.*); and *see also*, Contract 1, Notice (Section 18 *et seq.*). Clearly, if ProImmune felt that Holista was in breach of any of its contractual obligation under Contract 1 and Contract 2 they would have sent a formal notice of breach in the manner and method called for under the Contracts. Instead, as ProImmune represented to Holista and Holista relied on before entering into a new distribution agreement, the issue of failing to meet the prior year's minimum annual purchases was never considered a breach of Contract 1, or Contract 2; instead this provision was effectively deemed waived by this conduct, or at minimum, there are issues of fact concerning the waiver defense/ProImmune's satisfactory take on Holista's compliance with Contract 1 or Contract 2." | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Best evidence rule [Fed. R. Evid. 1002]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Hearsay [Fed. R. Evid. 801]; Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]. | |
| ¶ 9: "In short, until ProImmune unilaterally decided to repudiate Contract 4 by ceasing all lines of communication with Holista (in the Fall of 2019), both Dr. Crum and I wanted to the best for our respective companies during our near five-year relationship. That is why prior to entering into a new distribution agreement with ProImmune, Dr. Crum and I exchanged several emails with a business plan for how each party could better forecast accurate minimum sales in the ensuing distribution agreement. *This course of conduct (at the end of the one year, initial expiry period, Holista would draft a new business plan, which ProImmune had input on, and then the parties enter into a new distribution* | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Improper Opinion Testimony [Fed. R. Evid. 701]; Hearsay [Fed. R. Evid. 801]; Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal | |

3

| | | |
|---|---|---|
| *agreement) further buttresses the idea that the prior year's contract's annual minimum was deemed waived when the new contract was entered into. See, e.g.,* Contract 1 and Contract 2 at Section 13.2 (discussing extending the term of the contract)" | conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Speculative [Fed. R. Evid. 602]. | |
| ¶ 10: "The simple fact of the matter was that Holista was ProImmune's largest distributor, and during the years in which the Contracts were in effect, there were compliance issues on both parties sides, and Dr. Crum repeatedly made promises to me that went beyond the express terms of the Contract regarding the waiver of annual minimum purchases for prior Contracts, providing better packaging for Product (given Holista's complaints) and allowing for refunds and return after pick-up, shipment and inspection by Holista's end-customers; and, I, in turn, promised to do what I could to meet Holista's sales targets." | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Improper Opinion Testimony [Fed. R. Evid. 701]; Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Hearsay [Fed. R. Evid. 801]. | |
| ¶ 11: "But all that changed towards the Fall 2019 as I stated in my previous Declaration In Support of Holista's motion for summary judgment on Counts I and II of its counterclaims (ECF Doc. No. 47), which is fully incorporated by reference for the sake of brevity." | ProImmune hereby incorporates by reference its objections made to that declaration, as if made the same here. (ECF # 65-2). | |
| ¶ 12: "As stated therein, throughout 2019, Holista outlined several material breaches of Contract 4, which included delivery of non-conforming Product (a breach of the Express Warranties); failure to ensure properly packed Product at the Pick-Up location; and defectively shipped goods. These breaches were communicated usually by me through the course of several emails or phone calls – several of which even included copies of the | Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Best evidence rule [Fed. R. Evid. 1002]; Hearsay [Fed. R. Evid. 801]. | |

4

| | | |
|---|---|---|
| test results showing the deficiency of the amino acid content of the Product." | | |
| ¶ 13: "Most notable among the breaches were the several complaints about the amino acid content of the Product were raised with ProImmune and its manufacturer, UST, from August 2019 to the end of October 2019 at which point ProImmune just ceased all communications with Holista despite having $311, 850.00 of Product that Holista had paid for – the bulk of which was never even shipped to Holista. " | Best Evidence Rule [Fed. R. Evid. 1002]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."] | |
| ¶ 14: "As to the defective Product delivered, a non-exhaustive list of the issues raised in this correspondence were the following: difference in texture, taste, color, and amino acid content – each of which deviated from the 2018 Contract terms and were in breach of the Express Warranties. In fact, all of the foregoing was verified both by testing performed by Holista's customer and a separate independent analysis performed by an outside agent hired by Holista who each tested, unadultered Product and found it to be non-conforming. Moreover, the results of these finds were even shared with ProImmune and its third-party manufacture, UST Pharma. *See*, Exhibit C to ECF Doc. No. 47." | Lacks personal knowledge and lacks foundation [Fed. R. Evid. 602]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Best Evidence Rule [Fed. R. Evid. 1002]; Completeness Doctrine [Fed. R. Evid. 106]; Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]. | |
| ¶ 18: "Furthermore, the email correspondence sent by me to ProImmune in late 2019 along with the few phone calls I had with Dr. Crum during this time made clear to ProImmune that its failure to deliver conforming Product or explain the | Best evidence rule [Fed. R. Evid. 1002]; Relevance [Fed. R. Evid. 403]; Hearsay [Fed. R. Evid. 801]. | |

5

| | | |
|---|---|---|
| discrepancies in Product consistency (with that which Holista was promised and already paid for) would result in further damages to Holista – namely, lost profits and damaged reputation in the form of cancellation of purchases by Holista's customers." | | |
| ¶ 19: "And when confronted with these material breaches and discrepancies in Product variation, neither ProImmune nor its manufacturer explained or justified the quality discrepancy despite numerous attempts from Holista. In fact, the one ProImmune employee who was actually trying to work out a resolution to these various serious and material breaches of the Agreement, Nicholas Nash (ProImmune's Chief Financial Officer) was instructed by Dr. Crum to stop talking to us when the answers we were seeking were needed the most." | Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Relevance [Fed. R. Evid. 403]. | |
| ¶ 20. "In short, with both the Product Manufacturer (UST) and Mr. Nash ceasing all communication with us and, Dr. Crum refusing to get on the phone with us, Holista and its customers were left in the dark as to any viable explanation as to why the ProImmune amino acid content was so low and/or how ProImmune intended to cure the material breaches." | Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment."]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]. | |
| ¶ 21: "And this failure to cure and/or remedy the material breaches prolonged until December 2019 when Holista's external auditors sought to confirm with ProImmune as to how much Product inventory that Holista paid for that it was still owed (i.e., a | Sham-affidavit [*Mack v United States*, 814 F2d 120, (2d Cir 1987) ["It is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be | |

6

| | | |
|---|---|---|
| large portion of the $311,850). In response to this request, ProImmune simply denied the amount owed and countered with – for the first time during the course of our nearly five year relationship – threats to sue for breach of previous years distribution agreements despite Dr. Crum's expressed satisfaction (to me) with Holista's prior purchases made during each of the prior agreements entered into." | disregarded on a motion for summary judgment."]; Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]; Hearsay [Fed. R. Evid. 801]. | |
| ¶ 22: "Based on the foregoing, there can be no doubt that ProImmune's material breach of Contract No. 4 and/or repudiation of the very essence of the agreement, which excused Holista from any further performance and entitled Holista to seek damages." | Conclusory [*Larouche v. Webster*, 175 F.R.D. 452, (S.D.N.Y. 1996) ("When ultimate facts and legal conclusions appear in an affidavit, such extraneous material should be disregarded by the court."]. | |

Dated: August 20, 2021            **Brown Neri Smith & Khan, LLP**

By:     s/ Ryan Abbott
        Ryan Abbott

11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
(310) 593-9890

*Attorney for Plaintiff/Counterclaim Defendant,*
The ProImmune Company, LLC

## PROOF OF SERVICE

I am a resident of the State of New York, over the age of eighteen years, and not a party to the within action. My business address is: Brown, Neri Smith & Khan LLP, 11601 Wilshire Blvd., Suite 2080, Los Angeles, CA 90025. On the date below, I served the document(s) as follows:

- **PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF DR. RAJEN MANICKA IN OPPOSITION TO PROIMMUNE'S MOTION FOR SUMMARY JUDGMENT**

☒ **BY ELECTRONIC MAIL:** I caused such document(s) to be electronically mailed in PDF format as an e-mail attachment to each addressee for the above-entitled case. The transmission was complete and confirmed. A copy of the transmittal e-mail will be maintained with the original document(s) in our office.

To the addresses on the following address:

Natraj S. Bhushan, Esq.
Turturro Law P.C.
1602 McDonald Ave.
Brooklyn, NY 11230
E: natraj@turturrolawpc.com

Attorneys for Defendant/Counterclaim Plaintiff,
Holista Colltech, Ltd.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on August 20, 2021, at Albany, NY.

_____
Kete P. Barnes