UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PROIMMUNE COMPANY, LLC, *a Delaware limited liability company*,

        Plaintiff,

v.

HOLISTA COLLTECH LTD., *an Australian corporation*, *and* DOES 1–50, *inclusive*,

        Defendants.

---

HOLISTA COLLTECH LTD., *an Australian corporation*, *and* DOES 1–50, *inclusive*,

        Counter Plaintiffs,

v.

THE PROIMMUNE COMPANY, LLC, *a Delaware limited liability company*,

        Counter Defendant.

No. 20-CV-1247 (KMK)

OPINION & ORDER

Appearances:

Ryan Abbott, Esq.
Rowennakete Barnes, Esq.
Brown Neri Smith & Khan, LLP
Los Angeles, CA
*Counsel for Plaintiff/Counter Defendant*

Natraj Bhushan, Esq.
Turturro Law, P.C.
Staten Island, NY
*Counsel for Defendants/Counter Plaintiffs*

KENNETH M. KARAS, United States District Judge:

The ProImmune Company, LLC ("ProImmune") brings this Action against Holista Colltech Ltd. and Does 1–50 ("Holista") for Holista's alleged breach of four separate agreements to distribute a dietary supplement owned by ProImmune (the "Product"), entered into by the Parties between 2015 and 2018. (*See generally* Compl. (Dkt. No. 6).) On March 21, 2022, this Court granted ProImmune's Motion for Summary Judgment and denied Holista's Motion for Summary Judgment. (*See* Op. & Order ("First Summ. J. Op.") (Dkt. No. 85).) Before the Court is supplemental briefing related to ProImmune's Motion for Summary Judgment to "address the questions of whether the Fourth Contract is ongoing and whether ProImmune was subject to a duty to mitigate" prior to the Court determining damages for the relevant breached contracts. (*See id*. at 33.) For the foregoing reasons, the Court finds that ProImmune is entitled to damages under the First Contract, Second Contract, and the initial period of the Fourth Contract.

## I.  Background

### A.  Factual Background

The Court incorporates by reference the findings of fact in its March 21, 2022 Opinion and Order granting summary judgment to ProImmune ("First Summary Judgment Opinion" or the "Opinion") and assumes the Parties' familiarity with the facts as recounted there. (*See* First Summ. J. Op. at 2–15.)

### B.  Procedural History[1]

In its First Summary Judgment Opinion, the Court granted ProImmune's summary judgment motion and denied Holista's partial summary judgment. (*See* First Summ. J. Op. at

---

[1] The Court recites the procedural history as relevant to the instant Motion.

33.) In the Opinion, the Court deferred ruling on the damages owed to ProImmune pending additional briefing on two questions identified by the Court. (*Id.*)

On April 15, 2022, ProImmune filed its supplemental brief in support of the Motion for Summary Judgment. (*See* Pl.'s Supp. Brief in Supp. of Mot. ("ProImmune's Mem.") (Dkt. No. 90); Decl. of Albert Crum M.D. in Supp. of Mot. ("Second Crum Decl.") (Dkt. No. 90-1).)[2] After an extension of time, (*see* Dkt. No. 92), Holista filed its opposition on May 17, 2022, (*see* Def.'s Supp. Brief in Opp. of Mot. ("Holista's Mem.") (Dkt. No. 93)). ProImmune filed its reply on May 31, 2022. (*See* Pl.'s Reply Brief in Supp. of Mot. ("ProImmune's Reply") (Dkt. No. 94).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In deciding whether to award summary judgment, the [C]ourt must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable

---

[2] In support of its supplemental briefing, ProImmune filed a declaration from Albert Crum M.D., "the principal" of ProImmune at all times relevant to this suit. (*See* Second Crum Decl. ¶ 1.) This is Crum's third declaration filed in this case, including two declarations filed in 2021 during the original summary judgment briefing. (*See* Dkt. No. 57, 69, 90.) In his declaration, Crum references his previous declarations and draws a temporal contrast of ProImmune's expected profit under the Fourth Contract. (*Compare* Second Crum Decl. ¶ 4 (expecting $▮▮▮▮ in profit during the "Initial Period") *with id.* ¶ 5 (stating that 39 additional months have passed).) However, it appears that Crum has made a simple error, as this declaration is dated *prior* to the Court's Opinion and Order rather than dated one day prior to ProImmune filing the supplemental briefing. (*See* Second Crum Decl. 3 (stating that the document was "[e]xecuted on April 14, 2021" prior to this Court's ruling on March 21, 2022).) As this appears to be a mistake, the Court will assume that this declaration was executed on April 14, 202<u>2</u> rather than 202<u>1</u>.

3

inferences in its favor." *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

4

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

B.  Analysis

In granting ProImmune's Motion for Summary Judgment, this Court stated that the Parties "need[ed] to address the questions of whether the Fourth Contract is ongoing and whether ProImmune was subject to a duty to mitigate" prior to the Court issuing any decision on damages owed under the First, Second, and Fourth Contracts.  (*See* First Summ. J. Op. 33.)

In supplemental briefing, ProImmune argues that (1) the Fourth Contract remains in effect, (*see* ProImmune's Mem. 4–7), and (2) the company does not have a duty to mitigate the damages it is seeking, (*see id*. at 7–9).  In initial briefing before this Court, ProImmune represented that had Holista complied with the terms of the First Contract, ProImmune would have profited $█████0; had Holista complied with the terms of the Second Contract, ProImmune would have profited $█████; and had Holista complied with the terms of the Fourth Contract, ProImmune would have profited $█████ in the initial period and $█████ as of the time of filing.  (*See* First Summ J. Op. at 30; Decl. of Albert Crum M.D. in Supp. of ProImmune's Mot. ("First Crum Decl.") ¶ 17 (Dkt. No. 57-3).)  In subsequent briefing on damages, ProImmune represents that it is now owed █████ on the ongoing terms of the Fourth Contract.  (ProImmune's Mem. 6; *see also* Second Crum Decl. ¶ 5.)  The Court will address each question in turn.

1.  Applicable Law

"It has long been established in New York that a breaching party is liable for all direct and proximate damages which result from the breach." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (citing *Wakeman v. Wheeler & Wilson Mfg. Co.*, 4 N.E. 264, 266 (N.Y. 1886)); *see also Versatile Housewares & Gardening Sys., Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 239 (S.D.N.Y. 2011) ("[A] plaintiff in a breach of contract action may recover both general and consequential damages—amounts that compensate

6

the plaintiff both for the value of the promised performance and for additional losses the plaintiff suffered due to the failure to perform." (citing *Schonfeld v. Hilliard*, 218 F.3d 164, 175–76 (2d Cir. 2000))). In other words, an aggrieved party is entitled to "the amount necessary to put [it] in as good a position as it would have been had the contract been fully performed." *McKinley v. Allsopp, Inc. v. Jetborne Int'l, Inc.*, No. 89-CV-1489, 1990 WL 138959, at *8 (S.D.N.Y. Sept. 19, 1990) (citing *Kenford Co. v. County of Erie*, 493 N.E.2d 234, 235 (N.Y. 1986)). "[W]hen the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, the damages sought are general damages." *Tractebel*, 487 F.3d at 109 (citing *Am. List Corp. v. U.S. News & World Rep., Inc.*, 549 N.E.2d 1161, 1164 (N.Y. 1989)). General damages "may still be characterized as lost profits since, had the contract been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments." *Id.*

        2. Application

            a. Status of the Fourth Contract

As stated in the first Opinion, the renewal of the Fourth Contract between ProImmune and Holista is governed by Section 13.2 of the contract, which states: "Upon the expiry of the Initial Period, *provided that Holista has complied with all the terms and conditions hereof, and achieved the Minimum Annual Performance Requirements*, the terms of the Agreement shall be reviewed by Holista and ProImmune and *subsequently when all terms are mutually agreed*, including agreement on increased Minimum Annual Performance Requirements pursuant to Clauses 3.3 and 3.4 and Product Price, this Agreement will be automatically renewed at the end of the Initial Term or any Renewal Term as the case may be." (First Crum Decl. Ex. C ("Fourth Contract") § 13.2 (Dkt. No. 57-5) (emphases added); *see also* First Summ. J. Op. 31.) As such, the Fourth Contract may only be automatically renewed in the event that at least two conditions

precedent are met: (i) Holista complies with all of the terms of the Fourth Contract, including the Minimum Annual Performance Requirements, and (ii) the Parties mutually agree on the terms that will govern the renewed contract. (*See* First Summ. J. Op. 31.)

Importantly, the Court has already found that "Holista failed to meet its Minimum Annual Performance Requirements per the terms of the Fourth Contract." (*Id*. 26–28.) As such, and by the terms of the express contract, it appears that the Fourth Contract has not been renewed between the Parties. (*Id*. at 31 ("Because the Court has already found that the first condition precedent has not been met, it appears that the Fourth Contract was not automatically renewed.").) Despite this, ProImmune argues in supplemental briefing that Holista's "course of conduct" as well as various admissions made in discovery "demonstrates that [Holista has] treated Contract No. 4 as operable, valid and continuing." (ProImmune's Mem. 4–7.)

"When interpreting a contract, 'the intent of the parties governs.'" *Giraffe G4 Systems, LLC. v. Measurement, Ltd.*, No. 17-CV-5334, 2018 WL 1801962, at *3 (S.D.N.Y. Apr. 13, 2018) (quoting *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d Cir. 1999)). Intent is ascertained "from the plain meaning of the language employed" in the agreement. *Id*. (citing *Crane*, 171 F.3d at 737). In analyzing intent, "the rules of contract construction require [the Court] to adopt an interpretation which gives meaning to every provision of the contract." *Id*. (citing *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 111 (2d Cir. 2008)). Thus, courts must avoid "interpretations that render contract provisions meaningless or superfluous." *Id*. (citing *Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003)).

"Whether a contract is ambiguous is a question of law." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012). "Contract language is not ambiguous if it has a definite and precise meaning . . . concerning which there is [] no

8

reasonable basis for a difference of opinion." *Id*. (quotation marks omitted). When the parties' intent is unambiguous, the contract "must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2001) (citation omitted). If reasonable minds could differ about the meaning of contractual language, however, such language is ambiguous. *Id*. (describing contractual language as ambiguous when it "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement"). "The Court must then turn to extrinsic evidence to determine the parties' intent." *Madeline, L.L.C. v. Casden*, 950 F. Supp. 2d 685, 695 (S.D.N.Y. 2013) (quoting *State v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985) (per curium)). While extrinsic evidence generally may not vary or contradict the terms of a fully integrated document, it may be used to interpret facially ambiguous language in the contract. *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 69 (2d Cir. 2008) (allowing extrinsic evidence to "be used as a guide" to understand a party's rights).

Here, this Court does not need—and should not consider—extrinsic evidence to determine whether the Fourth Contract is still valid between the Parties. Based on long established Second Circuit precedent, it is clear to this Court that Holista's lack of compliance with the terms of the Fourth Contract ended the Fourth Contract without automatic renewal. To conclude otherwise would defy the "definite and precise meaning" of the contract at issue which both parties negotiated and agreed upon, without any "reasonable basis for a difference of opinion." *Bayerische Landesbank, N.Y. Branch*, 692 F.3d at 53. ProImmune cannot have it both ways: the Company cannot both argue that Holista clearly breached the minimum annual performance requirements *and* continue to argue that the contract is valid. If ProImmune wanted

9

to continue to work with Holista after four contracts worth of noncompliance by Holista, ProImmune needed to enter into a new contract.

The cases cited by ProImmune to the contrary, in the face of clear Second Circuit precedent, are not persuasive to the Court.  ProImmune cites New York caselaw discussing course of performance, focusing most closely on a case that states, in relevant part: "[T]he law is abundantly clear in New York that, even where a contract specifically contains . . . a provision stating that it cannot be modified except by a writing, it can, nevertheless, be effectively modified by actual performance and the parties' course of conduct."  *Estate of Kingston v. Kingston Farms Partnership*, 13 N.Y.S.3d 748, 748 (N.Y. App. Div. 2015).  However, Section 13.2 is not a provision that is similar to one that "cannot be modified except by a writing," or somehow is a provision that could constitute a waiver established by "affirmative conduct" as in *Kingston*.  *Id*.  In many ways, the idea that the Fourth Contract could "automatically renew" is a misnomer: the contract lists clear conditions that must be followed for both Parties to continue to be bound by the terms of the contract.  The Court disagrees with ProImmune that "[i]f Holista had never intended for Contract No. 4 to renew" it needed to issue a termination notice.  (ProImmune Reply 3.)  Instead, affirmative actions needed to be *taken* by *both parties* for the contract to continue in due course.

Moreover, the Court is skeptical of the evidence cited by ProImmune that Holista had an ongoing relationship with ProImmune under the Fourth Contract.  Contrary to ProImmune's representation, Holista's CEO did not acknowledge that the Fourth Contract was valid.  In response to questioning, Holista took the position that "it would roll over because the other four have rolled over."  (ProImmune Mem. 3.)  After an attorney clarified asking whether the contract "may still be enforced," the witness said "Yeah.  If the quality's right, we'll talk."  (*Id*.)  Under

10

both answers, it appears to this Court that the Holista representative qualified their answers without stating affirmatively and unequivocally that the contract was still in force.[3]

Accordingly, the Court finds that the Fourth Contract was not automatically renewed by the Parties, and ProImmune is only entitled to damages under the Initial Period of the contract.

### b. Duty to Mitigate Damages

In the First Summary Judgment Opinion, the Court also asked the Parties to address the issue of mitigation. (First Summ. J. Op. 32–33.) Specifically, the Court noted that "the Parties have not yet comprehensively addressed whether ProImmune was obligated to mitigate damages or, if so, which damages were subject to that duty." (*Id*. at 32.) In supplemental briefing, ProImmune argues that it is not obligated to mitigate the damages under each contract because the company "is only seeking general damages." (ProImmune's Mem. 7–9.) Moreover, ProImmune argus that "mitigation was effectively built into the contracts" because "the Contracts functioned and . . . were executed [to] create[] the situation where no further damages would be incurred by ProImmune." (*Id*. at 8.) The Court agrees.

"New York law requires the plaintiff in a breach of contract action to mitigate damages it incurs; failure to do so will result in the defendant not being charged with them." *Versatile Housewares*, 819 F. Supp. 2d at 247. "This duty to mitigate only extends to those damages 'that

---

[3] The Court also notes that, while ProImmune continually cites to facts in its initial 56.1 statement regarding as undisputed facts at this stage of summary judgment, this Court did not accept all of these facts as undisputed. Specifically, the Court never deemed ¶¶ 34–37 undisputed for the purposes of summary judgment. Instead, to the extent those paragraphs were mentioned, the Court described the various claims made by ProImmune without any indication as to whether the Court accepts those claims as undisputed. (*See* First Summ. J. Op. 11–15.) And, for the reasons stated in the first Opinion, the Court was—and remains—skeptical that the contract automatically renewed. (*See id*. at 30–32.) Moreover, Holista *did* dispute many of the operative statements in their response. (*See* Holista's Rule 56.1 Counter-Statement ¶¶ 35, 37 (Dkt. No. 73).) As such, the Court does not treat the cited statements related to this issue in ProImmune's supplemental briefing as undisputed.

11

the plaintiff could have avoided with reasonable effort and without undue risk, burden, or expense.'" *Id.* (quoting *U.S. Bank Nat'l Ass'n v. Abies & Hall Builders*, 696 F. Supp. 2d 428, 440–41 (S.D.N.Y. 2010)). "'Reasonable efforts' are efforts conducted with reasonable skill, prudence and efficiency." *Technest Holdings, Inc. v. Deer Creek Fund LLC*, No. 06-CV-1665, 2008 WL 3449941, at *19 (S.D.N.Y. Aug. 12, 2008).

However, the damages suffered by ProImmune based on Holista's breach—namely, lost profits—"are not of the kind to which the duty to mitigate applies, since those damages—the amounts not paid [under the Minimum Monthly Performance Targets]—were directly and unavoidably caused by the breach." *Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15-CV-7425, 2017 WL 4350576, at *7 (S.D.N.Y. May 3, 2017). "[T]he Second Circuit [has] acknowledged an exception to [the duty to mitigate] when a party is not seeking consequential damages," as is the case here. *Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, 257 F. Supp. 2d 751, 763 (S.D.N.Y. 2003) (citing *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 659 (2d Cir. 1994)). To be sure, lost profits-based damages can be both general and consequential damages. *See Abraham v. Leigh*, 471 F. Supp. 3d 540, 563 (S.D.N.Y. 2020) (outlining the difference between general and consequential lost profits damages). "Lost profits are general damages when 'the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract.' On the other hand, lost profits are categorized as consequential damages when the 'non-breaching party suffers loss of profits on collateral business arrangements.'" *Id*. (citing *Tractebel*, 487 F.3d at 109). As underscored by the Second Circuit, general damages "may still be characterized as lost profits since, had the contract been performed, the non-breaching party would have profited to the extent that his cost of performance was less than the total value of the breaching party's promised payments." *Tractebel*, 487 F. Supp. at 109.

12

Here, "the lost profits are the direct and probable consequence of the breach," which are "precisely what the non-breaching party bargained for[.]" *Id*. at 109–10. "[O]nly an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed." *Id*. at 110. The First, Second, and Fourth contracts between ProImmune and Holista obligated Holista to purchase a minimum quantity of the Product each month in order to meet the minimum targets. (*See* First Summ. J. Op. 3–4, 6–7, 11.) Here, ProImmune is not seeking damages based on potential "collateral business arrangements" where, as the non-breaching party, ProImmune's "ability . . . to operate [their] business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract." *Tractebel*, 487 F. Supp. at 109. If ProImmune requested this type of damages, they would be subject to mitigation under New York law. *Id*. (describing the test for mitigation of consequential damages). However, ProImmune is solely requesting damages based on the contract itself, which would have been owed to the company pursuant to a purchase order of the Product under the contract. (ProImmune Mem. 7.) Notably, Holista provided no argument whatsoever to counter ProImmune's contention that it is requesting general damages. (*See generally* Holista's Mem.) Instead, Holista confusingly has focused on which party maintained the duty to show that reasonable mitigation occurred, rather than address the threshold question of whether ProImmune must mitigate damages at all. (*See id.* at 3–6.)

Moreover, the fact that ProImmune effectively *did* mitigate under the special circumstances surrounding the Fourth Contract is immaterial. Here, through no fault of ProImmune, Holista purchased 3,500 kilograms worth of Product that Holista never arranged for pick-up or shipment. (First Summ. J. Op. 14, 32–33.) However, ProImmune is not seeking any damages related to this transaction. In addition, Holista's argument that it "can demonstrate that

13

there were reasonable means for ProImmune to mitigate its damages . . . by simply selling Product to another third party" does not matter here, because the Court has found that ProImmune had no duty to mitigate to receive what was specifically owed to it under the terms of the Fourth Contract. (Holista's Mem. 4–5.)  As such, the Court finds that ProImmune had no obligation to mitigate under the three contracts at issue.

*   *   *

Accordingly, ProImmune is entitled to damages under the First, Second, and Fourth Contracts.  The Court awards ProImmune damages as follows: (1) under the First Contract, ProImmune is entitled to $[redacted]; (2) under the Second Contract, ProImmune is entitled to $[redacted]; and (3) under the Fourth Contract, ProImmune is entitled to $[redacted].

### III.  Conclusion

For the foregoing reasons, ProImmune is granted damages related to this Court's previous Motion for Summary Judgment in the total amount of $1,198,150.  The Clerk of the Court is respectfully requested to file this Opinion & Order under seal, restricted to ProImmune, Holista, and the Court, and to close the case.[4]

SO ORDERED.

Dated:   January 30, 2023
         White Plains, New York

                                                          KENNETH M. KARAS
                                                          United States District Judge

---

[4] This Opinion & Order has been filed under seal because it discusses information covered by a protective order.  As such, the Parties are to submit joint proposed redactions to the Court by no later than February 17, 2023.