Ryan B. Abbott (5053673)
 ryan@bnsklaw.com
Rowennakete P. Barnes (5528955)
 kete@bnsklaw.com
**BROWN NERI SMITH & KHAN, LLP**
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980

*Attorneys for Plaintiff/Counterclaim-Defendant,*
The ProImmune Company, LLC

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PROIMMUNE COMPANY, LLC, a Delaware limited liability company;<br><br>   Plaintiff,<br><br>v.<br><br>HOLISTA COLLTECH LTD., an Australian corporation; and DOES 1-50, inclusive;<br><br>   Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No.: 7:20-cv-01247-KMK |

**PLAINTIFF/COUNTERCLAIM-DEFENDANT THE PROIMMUNE COMPANY, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND <u>PREJUDGMENT INTEREST</u>**

1

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................... | 5 |
| II. | RELEVANT FACTUAL BACKGROUND .......................................................... | 6 |
| | A. The Claims and the Relevant Contract Provisions ............................................. | 6 |
| | B. ProImmune's Reasonable Efforts in Prosecuting and Defending this Proceeding ........................................................................................................... | 7 |
| | C. ProImmune Prevails on its First and Fourth Claims for Breach of Contract and in its Defense of Holista's Counterclaim ..................................... | 9 |
| III. | ARGUMENT .......................................................................................................... | 10 |
| | A. The Provisions of Contracts Nos. 1 and 4 for Attorneys' Fees Indisputably Entitle ProImmune to its Recovery for those Claims ............... | 11 |
| | B. ProImmune is the Prevailing Party on its Claims and on its Defense of Holista's Counterclaims ..................................................................................... | 12 |
| | C. ProImmune's Attorney's Hourly Rate and Hours Expended is Reasonable ........................................................................................................... | 13 |
| | D. ProImmune Requests a Multiplier of 1.25 Given the Risk Taken and Complete Success Obtained .............................................................................. | 16 |
| | E. ProImmune is Entitled to an Award of Prejudgment Interest in Prevailing on its Claims for Breach of Contract ........................................... | 18 |
| IV. | CONCLUSION ...................................................................................................... | 18 |

2

## TABLE OF AUTHORITIES

Page(s)

*Alland v. Consumers Credit Corp.*,
  476 F.2d 951 (2d Cir. 1973) ............................................................................................... 10

*F.H. Krear & Co. v. Nineteen Named Trustees*,
  810 F.2d 1250 (2d Cir. 1987) ....................................................................................... 10, 13

*VR Optics, LLC v. Peloton Interactive, Inc.*,
  No. 16-CV-6392 (JPO), 2021 WL 1198930 (S.D.N.Y. Mar. 30, 2021) ..................... 10, 16

*Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*,
  930 F. Supp. 159 (S.D.N.Y. 1996) .................................................................................... 10

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*,
  537 F.3d 168 (2d Cir. 2008) ............................................................................................... 11

*Pu v. Russell Publ'g Grp., Ltd.*,
  No. 15-CV-3936 (VSB), 2017 WL 4402544 (S.D.N.Y. Sept. 30, 2017) ......................... 11

*Diamond D Enterprises USA, Inc. v. Steinsvaag*,
  979 F.2d 14 (2d Cir. 1992) ................................................................................................ 12

*Megna v. Biocomp Lab'ys Inc.*,
  225 F. Supp. 3d 222 (S.D.N.Y. 2016) ............................................................................... 12

*Millea v. Metro-N. R. Co.*,
  658 F.3d 154 (2d Cir. 2011) ........................................................................................ 14-16

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................................... 14, 15, 17

*In re Telik, Inc. Sec. Litig.*,
  576 F.Supp.2d 570 (S.D.N.Y.2008) .................................................................................. 15

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ........................................................................................... 15-17

*In re Nassau Cnty. Strip Search Cases*,
  12 F. Supp. 3d 485 (E.D.N.Y. 2014) ................................................................................. 17

*Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.*,
  697 F.2d 481 (2d Cir.1983) ............................................................................................... 18

*Lee v. Joseph E. Seagram & Sons, Inc.*,
  592 F.2d 39 (2d Cir.1979) ................................................................................................. 18

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
  936 F.2d 692 (2d Cir. 1991) .............................................................................................. 18

**STATUTES**

FRCP 54(d)(2)(A) ................................................................................................................... 10

N.Y.C.P.L.R. § 5001 (McKinney 1963) ................................................................................. 18

N.Y.C.P.L.R. § 5002 (McKinney 1963) ................................................................................... 18

N.Y.C.P.L.R. § 5004(a) (McKinney 1963) .............................................................................. 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case arose out of the failed business relationship between Plaintiff/Counterclaim-Defendant The ProImmune Company, LLC and Defendant/Counterclaim-Plaintiff, Holista Colltech, Ltd. The Parties had four separate contracts that provided for the purchase of minimum quantities of a product by Holista from ProImmune. ProImmune alleged that Holista failed to meet its minimum purchase requirements under those contracts. Holista in turn counterclaimed alleging that ProImmune breached the Parties' fourth contract and express warranties incorporated.

On March 21, 2022, the Court granted ProImmune's Motion for Summary Judgment, holding that Holista breached the Parties' first, second, and fourth contracts. The Court also denied Holista's motion for summary judgment as to its claim for breach of contract. The court affirmed that order on January 31, 2023, after supplemental briefing on two other issues. Thus, ProImmune succeeded on both its claims under the first and fourth contract, and on its defense against Holista's counterclaim under the fourth contract, and is the prevailing party on those claims.

The first and fourth contracts provide for Holista to pay ProImmune's attorneys' fees either as an indemnification of all costs and expenses that Holista caused, or expressly in terms of Holista's failure to comply with the respective agreement at issue. ProImmune is contractually entitled to its attorneys' fees and moves the Court here for them. ProImmune seeks $296,101.72 in attorneys' fees, as set out in the Declaration of Kete Barnes with counsels' time-keeping records attached.

ProImmune is also requesting the Court award it prejudgment interest. Prejudgment interest is applicable to claims for breach of contract and ProImmune succeeded on those claims.

## II. RELEVANT FACTUAL BACKGROUND

### A. The Claims and the Relevant Contract Provisions

On March 16, 2015, the Parties entered into their first distribution agreement ("Contract No. 1). (*See* ECF 50, Ex. A, at 11 of 19.) Under Contract No. 1, "Holista agrees to do the following:

> "2.3.5. assume and discharge for its own account all cost and expenses necessary or incidental to the distribution of the Product (including but not limited to, packaging, advertising, taxes, licenses and permits) and *shall indemnify PROIMMUNE against all costs, expenses, claims, promises, guarantees, debts, obligations and liabilities of any kind incurred, contractor for, or created by HOLISTA, which have not been specifically assumed in writing and in advance by PROIMMUNE*[.]"

(*Id.*, at 14 of 19 (emphasis added).)

On September 1, 2018, the Parties entered into a fourth distribution agreement ("Contract No. 4"). (*See* ECF 52, Ex. C, at 35 of 113.) Under Section 13.2,

> "Upon the expiry of the Initial Period, provided that Holista has complied with all the terms and conditions hereof, and achieved the Minimum Annual Performance Requirements, the terms of this Agreement shall be reviewed by Holista and ProImmune and subsequently when all terms are mutually agreed, including agreement on increased Minimum Annual Performance Requirements pursuant to Clauses 3.3 and 3.4 and Product Price, this Agreement will be automatically renewed at the end of the Initial Term or any Renewal Term as the case may be, on the same terms and conditions as set forth herein, save and except the Minimum Annual Performance Requirements which shall be increased in accordance with the terms hereof, for a successive periods of one (1) year (in each case a "Renewal Term"). *Additionally, direct legal fees associated with any future modifications and/or compliance of this Agreement will be charged back to Holista for issues it initiates.*

(*Id.*, at 47 of 113 [emphasis added].)

ProImmune filed suit against Holista on February 12, 2020, alleging claims for breach of contract under the Parties' first and fourth contracts (among other claims). (ECF 1.) On July 9,

6

2020, Holista filed its answer and counterclaims, originally alleging counterclaims for Breach of Contract, Cover (UCC 2-712), and Promissory Estoppel. (ECF 14.) Ultimately, following ProImmune's challenge to Holista's counterclaims as alleged, Holista amended its counterclaims twice, ending with one claim for Breach of Contract and one claim for Breach of Express Warranties (N.Y. UCC § 2-313.) (ECF 26, pp. 11-12.) Holista's claims indisputably were brought under the Parties' fourth contract. (*See* ECF 26, at pp. 8-15.)

### B. ProImmune's Reasonable Efforts in Prosecuting and Defending this Proceeding

Throughout the next seven months (from the scheduling order to the close of discovery), ProImmune prosecuted its claims and defended against Holista's counterclaims. (Barnes Decl. ¶ 7.) Both Parties exchanged initial disclosures. (*Id*.) ProImmune started its written discovery by serving a set of requests for production on Holista. (*Id*.) Holista shortly after served requests for production, interrogatories, and requests for admission. (*Id*.) ProImmune produced 6,749 pages of documents, which included a certain amount designated as "Attorneys' Eyes Only" under the Parties' stipulated protective order. (*Id*.) Holista produced 3,841 pages. (*Id*.) ProImmune then served a set of interrogatories, of which it had to meet and confer with Holista regarding deficient responses, and to which Holista provided supplemental responses to. (*Id*.) Holista sent another set of requests for production to ProImmune later in the case. (*Id*.)

In addition to the written discovery, the Parties also completed the Rule 30(b)(6) depositions of ProImmune and Holista. (*Id*.) Holista's 30(b)(6) deposition had to be completed in two separate sessions because of technical difficulties experienced by Holista's CEO that occurred during the first scheduled deposition. (*Id*.) Holista also took the deposition of former ProImmune accountant Nicholas Nash. (*Id*.)

7

While the Parties had initially proposed a schedule for the completion of fact discovery by December 2020 (ECF 15 and 16), on November 13, 2020, both Parties consented to extend that deadline to January 31, 2021, while also extending the expert discovery deadline to March 15, 2021. (ECF 28.) On January 28, 2021, Holista applied for another extension of the fact discovery deadline to March 15, 2021, and the expert discovery deadline to April 15, 2021. (ECF 30.) Holista sought the extension to conduct the deposition of Nicholas Nash and obtain responses to its requests for production that it served shortly before its request for an extension. (*Id*.) ProImmune opposed the request, but the Court granted it and extended the deadlines. (ECF 32 and 33.)

Following Mr. Nash's deposition, the Parties stipulated to a briefing schedule for competing motions for summary judgment. (ECF 36.) The Court entered the proposed schedule. (ECF 37.) The Parties then stipulated to extend the deadline, first to provide more time to file the motions, and second to exchange evidence ahead of filing to mark for redaction and for filing under seal as necessary. (ECF 40 and 42.) On June 14, 2021, the Parties filed their opening briefs on summary judgment. (ECF 45 and 49.) On July 15, 2021, ProImmune filed its opposition to Holista's MSJ. (ECF 65.) One week before, Holista applied for an extension to oppose Plaintiff's MSJ and was granted that extension. (ECF 62 and 63.) Holista filed its opposition to ProImmune's MSJ on July 30, 2021. (ECF 72.) On August 20, 2021, the Parties filed their replies. (ECF 74 and 77.) After ProImmune filed its reply, Holista indicated that it would argue that ProImmune's reply was untimely, taking the position that the extension it requested and was granted with respect to its opposition, did not apply to ProImmune's deadline to file its reply. ProImmune then filed a pre-motion conference request letter, intended to file a motion pursuant to FRCP 6(b)(1)(B) to treat its reply as timely filed. (ECF 79.) The Court entered an order

8

holding ProImmune's reply timely, without the need for further briefing. (ECF 80.) Holista then sought leave to file a sur-reply (ECF 81), which the Court granted (ECF 82), and Holista filed its sur-reply on September 3, 2021. (ECF 83.)

### C. ProImmune Prevails on its First and Fourth Claims for Breach of Contract and in its Defense of Holista's Counterclaim

ProImmune's motion for summary judgment sought judgment as to its first and fourth claims for breach of contract (along with its second claim, that is not pertinent here), and against Holista's affirmative defense of waiver and Holista's claims for breach of contract and breach of express warranties. (ECF 48.) ProImmune's affirmative claims (at issue here) arose out of the Parties' first and fourth contracts. (ECF 1 at ¶¶ 35-39, and 50-54.) Holista's MSJ sought partial summary judgment as to its first and second counterclaims. (ECF 45.)

On March 21, 2022, the Court granted ProImmune's MSJ, requested supplemental briefing on two additional issues, and affirmed its order granting summary judgment after the Parties submitted their supplemental briefing on January 30, 2023. (ECF 85 and 96.) The Court granted ProImmune all damages sought under the first and fourth contracts. (*See* ECF 57 at p. 13, § F [Damages for Contracts Nos. 1 and 4]; ECF 85 at p. 6 and 13 [same], and ECF 96 at p. 14 [same].)[1]

ProImmune now brings its motion for attorneys' fees as the prevailing party and pursuant to the contractual provisions under Contracts Nos. 1 and 4.

---

[1] ProImmune acknowledges that the amounts sought in summary judgment were not the amounts alleged owed in its complaint. The amounts owed as alleged were total damages, including expenses involved in the manufacture of product. ProImmune's damages on summary judgment only consisted of the profits lost on the expected purchases. ProImmune also recognizes that the Court did not grant summary judgment as to its argument that Contract No. 4 was continuing and that damages were on-going. That argument arose through discovery, based on ProImmune's perspective that Holista testified as such, among other things.

**III.     ARGUMENT**

"While it is true that each party to a litigation normally must bear its own expenses, it is clear that the parties may by contract agree to permit recovery of attorney's fees as part of plaintiff's expenses in prosecuting suit. And wherever they are valid under applicable state law, contractual rights to attorney's fees are enforceable in federal court." *Alland v. Consumers Credit Corp.*, 476 F.2d 951, 955–56 (2d Cir. 1973) (citations omitted). "As a general matter of New York law, which the Contracts provided was to govern, when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable. *F.H. Krear & Co. v. Nineteen Named Trustees* ("*F.H. Krear & Co.*"), 810 F.2d 1250, 1263 (2d Cir. 1987). "As to whether [the party] is entitled to attorneys' fees, generally, in a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute or court rule." *TAG 380, LLC v. ComMet 380, Inc*., 10 N.Y.3d 507, 515 (2008). "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FRCP 54(d)(2)(A). "[C]ourts in the Second Circuit regularly assess damages for violations of [indemnification] or defense provisions on a motion for attorney's fees, not on a motion for summary judgment or at trial. *VR Optics, LLC v. Peloton Interactive, Inc.*, No. 16-CV-6392 (JPO), 2021 WL 1198930, at *1 (S.D.N.Y. Mar. 30, 2021) (citing *Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*, 930 F. Supp. 159, 165 (S.D.N.Y. 1996).

### A. The Provisions of Contracts Nos. 1 and 4 for Attorneys' Fees Entitle ProImmune to its Recovery for those Claims

The attorneys' fees provisions in Contract Nos. 1 and 4 are clear in their intent to provide for the recovery of attorneys' fees by ProImmune against Holista here. "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008); *See also Pu v. Russell Publ'g Grp., Ltd.*, No. 15-CV-3936 (VSB), 2017 WL 4402544, at *2 (S.D.N.Y. Sept. 30, 2017) ["If there is an enforceable contractual fee-shifting provision, 'the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'"].

Here, both contractual provisions are clear that Holista is responsible for the attorneys' fees it caused ProImmune to incur as a result of this litigation. First, Section 2.3.5 of Contract No. 1 states that Holista "shall indemnify PROIMMUNE against all costs, expenses, claims, promises, guarantees, debts, obligations and liabilities of any kind incurred, contracted for, or created by HOLISTA, which have not been specifically assumed in writing and in advance by PROIMMUNE[.]" (ECF 50, Ex. A, at 14 of 19.) The provision makes Holista responsible for those expenses specifically created by Holista and which have not been specifically assumed in writing and in advance by ProImmune. Holista created these costs by breaching Contract No. 1 and there are no prior written assumptions where ProImmune would be responsible for these costs Holista created.

Second, Section 13.2 of Contract No. 4 states that "direct legal fees associated with any future modifications and/or compliance of this Agreement will be charged back to Holista for issues it initiates." (ECF 52, Ex. C, at 47 of 113.) Again, this provision also makes it

11

unmistakably clear that Holista is liable for ProImmune's attorneys' fees issues that it initiates regarding compliance of the agreement. Holista failed to make the minimum purchases as required, initiating ProImmune's right to enforce its contractual remedies for Holista's breach.

The contractual provisions make Holista responsible for ProImmune's attorneys' fees with respect to ProImmune's first and fourth causes of action.

Also, "where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim." *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 18 (2d Cir. 1992) (citations omitted). Holista initiated its counterclaims with respect to Contract No. 4 and ProImmune prevailed in its defense. ProImmune is entitled to its fees for successfully defending Holista's counterclaims.

Accordingly, both contractual provisions make clear that ProImmune is entitled to its attorneys' fees with respect to the First and Fourth Causes of Action and for its defense of Holista's counterclaims.

### B. ProImmune is the Prevailing Party on its Claims and on its Defense of Holista's Counterclaims

The Court granted ProImmune's Motion for Summary Judgment as to its first and fourth claims and denied summary judgment as to Holista's counterclaims, indisputably making ProImmune the prevailing party entitled to its attorneys' fees. "A party is the prevailing party in the litigation if there is a "judicially sanctioned change in the legal relationship of the parties" favoring it, including an "enforceable judgmen[t] on the merits" or a "court-ordered consent decre[e]." *Megna v. Biocomp Lab'ys Inc.*, 225 F. Supp. 3d 222, 224 (S.D.N.Y. 2016). As a result of prevailing on its claims, and since the contracts provide for the recovery of attorneys' fees,

12

ProImmune is entitled to its attorneys' fees for its first and fourth affirmative claims and as against Holista's counterclaims.

### C. ProImmune's Attorney's Hourly Rate and Hours Expended is Reasonable

ProImmune's attorneys succeeded in recovering all amounts due to ProImmune under Contracts Nos. 1 and 4 and in defending Holista's counterclaims, and the hourly rates and hours expended in do so were reasonable. "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.' In general, the court uses a 'lodestar' method, in which 'the hours reasonably spent by counsel, as determined by the Court, [are] multiplied by the reasonable hourly rate.' The lodestar analysis is, however, tempered by a policy requiring that contractual provisions for the payment of attorneys' fees be strictly construed, and general language will not be sufficient to warrant an award for a type of expense that is not customarily reimbursed. *F.H. Krear & Co.*, *supra*, 810 F.2d at 1263. ProImmune's attorneys spent a total of 517.4 hours prosecuting and defending this case with respect to the claims at issue here and the counterclaims.

First, counsel's straightforward prosecution and defense of the claims supports a finding of reasonableness in the hours expended. "New York courts have stated that, as a general rule, they will rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation." *Id.*, at 1264. The case was brought on a hybrid basis, with a contingency (40%) fee combined with a dramatically reduced payment amount for attorney time on counterclaims of ($95). The standard hourly rates of the attorneys involved in this case are $895 for Ryan Abbott

13

and $395 for Kete Barnes. At standard hourly rates, the sought attorneys' fees come nowhere close to exceeding the recovery of ProImmune. Further, "the novelty and complexity of a case generally may not be used as a ground for [adjusting the lodestar]" because they are already included in the lodestar calculation itself, being "fully reflected in the number of billable hours recorded by counsel." *Millea v. Metro-N. R. Co.* ("*Millea*"), 658 F.3d 154, 167 (2d Cir. 2011) [overturned by regulation on separate grounds]. Counsels' hourly rates are reasonable based on this first factor.

Second, the hours expended by ProImmune are reasonable. ProImmune sent out sets of written discovery and took the deposition of Holista's PMK (through two sessions, because of Holista's technical difficulties). (Barnes Decl. ¶ 7.) There were no other depositions taken by ProImmune and all discovery was streamlined to focus directly on all issues of the case. (*Id.*, ¶ 7.) This strategy proved successful, as after this limited discovery, ProImmune recovered 100% of the damages available. ProImmune's counsel Kete Barnes managed the day-to-day aspects of the case, with partner Ryan Abbott providing for review or other limited aspects of the case (such as the parties' depositions). With very limited exception, ProImmune did not have both attorneys present for each matter, or conducting duplicative work. ProImmune conducted all of its work in prosecuting and defending these claims and counterclaims, in a total of 517.4 hours. Thus, the hours that ProImmune expended on this matter were reasonable.

Third, ProImmune's counsel are highly experienced in commercial litigation of this nature. (Barnes Decl. ¶¶ 9 and 10.) Both of ProImmune's attorneys are licensed in New York and California and regularly practice in complex commercial litigation disputes. (*Id.*) Both have significant number of years practicing commercial litigation, in state and federal courts throughout the country. (*Id.*) "To evaluate the 'quality of the representation,' courts review the

14

recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *In re Citigroup Inc. Sec. Litig.* ("*Citigroup*"), 965 F. Supp. 2d 369, 400 (S.D.N.Y. 2013) (citation omitted). As set forth in the supporting Barnes Declaration, ProImmune's counsel have significant experience in complex commercial litigation, and again, obtained 100% of the damages available to ProImmune through its claims.

Fourth, numerous courts have awarded similar hourly rates for the regular hourly rates that ProImmune's attorneys charge in a non-contingency matter. ProImmune's counsels' regular hourly rates for were $895 for Ryan Abbott and $395 for Kete Barnes. (Barnes Decl. ¶¶ 9 and 10.) These rates are close to or within market rates for other fee requests in the Southern District of New York. *See, e.g., In re Telik, Inc. Sec. Litig.,* 576 F.Supp.2d 570, 589 (S.D.N.Y.2008) [finding blended partner rates at $632 and blended associate rates at $402 "within the range accepted in this district."]; *see also Citigroup*, *supra*, 965 F. Supp. 2d at 394 [finding partner rates of $700-750 and associate rates of $300-550 consistent with rates charged in the district]; *see also Goldberger v. Integrated Res., Inc.* ("*Goldberger*"), 209 F.3d 43, 56 (2d Cir. 2000) [finding a rate of $550 "clearly at the higher end" of "the prevailing range."]. While these cases were not the same breach of contract claims and related issues in this case, the rates were also at least 12 years old. Thus, ProImmune's counsels' rates – for skilled attorneys practicing complex commercial litigation – are reasonable here.

Fifth and finally, ProImmune has reduced its hours proportionally with respect to its claims for the second and third contracts, under which there are no attorneys' fees provisions. "When calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting. Hours spent solely on common law claims and statutory claims not subject to fee-shifting must be excluded to reflect the default rule that 'each

15

party must pay its own attorney's fees and expenses.'" *Millea*, *supra*, 658 F.3d at 168. However, "[h]ours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint." *Id*., n. 4; *See also VR Optics, LLC*, *supra*, No. 16-CV-6392 (JPO), 2021 WL 1198930, at *3 ["Having concluded that Peloton can claim attorney's fees for just two its affirmative claims, the Court must determine what portion of its claimed $5,152,503.62 Peloton may actually seek. […] The Court may achieve 'rough justice' by taking into account the documentation submitted, as well as its 'overall sense of the suit,' and then estimating the allocation of attorneys' time."]. ProImmune respectfully proposes a reduction of 25% for time spent on claims regarding the second and third contract. While the second contract was included as part of ProImmune's motion for summary judgment, the third contract was not. Other than the discovery that occurred prior to the summary judgment motion, ProImmune had no other fees regarding the third contract claim. Thus, ProImmune has documented and apportioned those fees that included work on the second and third contracts, as indicated in the submitted time statements, and believes that a reduction of 25% of those mixed hours allotted is reasonable.

      By apportioning and reducing the hours sought to remove those not covered by the contracts with attorney's fees provisions, ProImmune has reasonably set forth all hours subject to the attorneys' fees request it makes here.

### D. ProImmune Requests a Multiplier of 1.25 Given the Risk Taken and Complete Success Obtained

ProImmune's counsel took this case on a contingency basis understanding the fact that it might not recover anything in terms of fees[2] and respectfully requests that the Court apply a 1.25x multiplier to the fees awarded to recognize that risk and ProImmune's success. "Once that initial [Lodestar analysis] computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys. *Goldberger*, *supra*, 209 F.3d at 47. "Of course contingency risk and quality of representation must be considered in setting a reasonable fee." *Id*., at 53; *see also In re Nassau Cnty. Strip Search Cases*, 12 F. Supp. 3d 485, 493 (E.D.N.Y. 2014) ["The lodestar may be increased, in the Court's discretion, 'based on factors such as the riskiness of the litigation and the quality of the attorneys.'"]. "Significant risks weigh in favor of substantial compensation above what a paying client would have paid because '[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'" *Citigroup*, *supra*, 965 F. Supp. 2d at 399.

ProImmune's counsel litigated the case on a contingency basis (40%)– and, indeed, has yet to recover any portion of this amount. Given this risk, and the fact that ProImmune succeed in recovering 100% of damages available, ProImmune's counsel respectfully requests a multiplier of 1.25x. Even with this multiplier, ProImmune's attorneys' fees come nowhere near exceeding its recovery for its claims, but at the very least, provide for an amount of fees that counsel negotiated for, and limit the reduction in overall recovery that ProImmune experiences.

---

[2] Except for the exceptionally discounted rate of $95/hour for the counterclaims paid by ProImmune.

### E. ProImmune is Entitled to an Award of Prejudgment Interest in Prevailing on its Claims for Breach of Contract[3]

"Under New York law, which the Agreement provided was to control, a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right. *See* N.Y.C.P.L.R. §§ 5001, 5002 (McKinney 1963); *Bulk Oil (U.S.A.), Inc. v. Sun Oil Trading Co.,* 697 F.2d 481, 484–85 (2d Cir.1983); *Lee v. Joseph E. Seagram & Sons, Inc.,* 592 F.2d 39, 41 (2d Cir.1979)." *U.S. Naval Inst. v. Charter Commc'ns, Inc.,* 936 F.2d 692, 698 (2d Cir. 1991). Prejudgment interest is to be computed from the earliest ascertainable date the cause of action existed. N.Y.C.P.L.R. § 5001(b). Prejudgment interest accrues at a rate of nine percent (9%) per annum. N.Y.C.P.L.R. § 5004(a). ProImmune prevailed on its claim for breach of contract, and respectfully requests the Court award it the amounts as calculated in the March 24, 2023 Declaration of Kete Barnes submitted previously. (ECF 105-2 and 106.)

## IV. CONCLUSION

Holista and ProImmune negotiated the inclusion of the provisions providing for the recovery of attorneys' fees by ProImmune in the event that litigation resulted from the Parties' relationship. This lawsuit did result, ProImmune prevailed, and ProImmune should be entitled to its fees. The fees counsel seeks here are reasonable, and both the hourly rates and hours expended in prosecuting and defending this case are reasonable.

ProImmune respectfully requests the Court grant its motion for attorney's fees and award ProImmune its $296,101.72 in fees requested. ProImmune also respectfully requests the Court award it prejudgment interest on its claims.

---

[3] ProImmune requested the Court award it prejudgment interest in its proposed judgment filed on March 24, 2023. (ECF 105 and 105-1.)

Dated: April 3, 2023	**BROWN NERI SMITH & KHAN, LLP**


By: s/ Ryan Abbott
 Ryan Abbott

11601 Wilshire Blvd., Ste. 2080
Los Angeles, CA 90025
(310) 593-9890

*Attorney for Plaintiff/Counterclaim Defendant,*
The ProImmune Company, LLC

19