UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE PROIMMUNE COMPANY, LLC, *a Delaware limited liability company*,

                            Plaintiff,

v.

HOLISTA COLLTECH LTD., *an Australian corporation, and* DOES 1–50, *inclusive*,

                            Defendants.

No. 20-CV-1247 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

Before the Court is Plaintiff's Motion for Attorneys' Fees and Prejudgment Interest, filed on April 3, 2023. (Mot. (Dkt. No. 108); Mem. of Law in Supp. of Mot. ("Pl's Mem.") (Dkt. No. 109); Decl. of Kete P. Barnes in Supp. of Mot. (Barnes Decl.) (Dkt. No. 110).) Defendants filed their opposition on April 17, 2023, ("Defs' Opp." (Dkt. No. 111)), and Plaintiff replied on April 20, 2023, (Dkt. No. 112).

The Court assumes the Parties' familiarity with the facts and the procedural history of this case, as described in its two summary judgment opinions. (*See* Dkt. Nos. 85, 96.) The Court will therefore recount only the background information necessary to resolve the instant Motion.

In an Order signed August 1, 2023, the Court granted Plaintiff's Motion in part, finding it was entitled to attorneys' fees under one of four contracts subject to suit and awarding 9% prejudgment interest. *See Proimmune Co. v. Holista Colltech Ltd.*, No. 20-CV-1247, 2023 WL 5835582, at *3–4 (S.D.N.Y. Aug. 1, 2023). That Order requested briefing about how to calculate attorneys' fees where "only one contract subject to litigation allows for reasonable fees," to which each Party responded with a supplemental memorandum. *Id*. at *3 (*See* Supp.

Mem. of Law ("Pl's Supp. Mem.") (Dkt. No. 117); Supp. Mem. of Law ("Defs' Supp. Mem.") (Dkt. No. 118).)

On August 16, 2023, the Court requested additional clarification from Plaintiff about if, and to what extent, Plaintiff could attribute billing entries exclusively to one contract. (Order (Dkt. No. 120).) Plaintiff responded with a supplemental declaration on August 31, 2023, (Decl. of Kete P. Barnes in Supp. of Mot. ("Barnes Supp. Decl.") (Dkt. No. 121)), which Defendants further opposed, (Defs' Mem. of Law in Further Opp. to Mot. ("Defs' Supp. Opp.") (Dkt. No. 122)). For the following reasons, the Court awards Plaintiffs $196,017.50 in attorneys' fees.

## I.  Discussion

"Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (citing, inter alia, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177–79 (2d Cir. 2005)).

Here, the Court already has found that "unmistakable" language in the Fourth Contract entitles Plaintiff to a fee award. *Proimmune*, 2023 WL 5835582, at *3. The Court must therefore examine whether Plaintiff's request is reasonable. *See Merch. Cash & Cap. LLC v. Edgewood Grp., LLC*, No. 14-CV-3497, 2015 WL 4430643, at *8 (S.D.N.Y. July 2, 2015) (awarding reasonable attorneys' fees contemplated by the parties' contract), *report and recommendation adopted*, 2015 WL 4451057 (S.D.N.Y. July 20, 2015).

Plaintiff's counsel submitted detailed time entries to support their fee application. (*See generally* Barnes Decl., Ex. A (Dkt. No. 110-1).) Plaintiff divided billing entries into Mixed and Non-Mixed Hours—the former representing time dedicated to multiple breach of contract claims and the latter representing time dedicated to the Fourth Contract or to time that would have

accrued "regardless of the cause of action." (*See* Barnes Decl. ¶¶ 3–4; Barnes Supp. Decl. ¶ 3.) Because Mixed Hours included time spent litigating contracts without fee provisions, Plaintiff proposed reducing (or "apportioning") those hours by 40%. (Pl's Supp. Mem. 3, 6.) Per this Court's Order, Plaintiff submitted a revised application further detailing which entries were attributable solely to work on the Fourth Contract and which entries are appropriately categorized as Mixed Hours. (*See generally* Barnes Supp. Decl.) Among other things, the revised application identified 24 new time entries that should be "subject to apportioning." (*Id*. ¶¶ 4–5.) Plaintiff also requested a 1.25x multiplier "given the risk taken and complete success obtained" in the litigation. (Pl's Mem. 17.) Taking those changes, and Plaintiff's multiplier, into account, Plaintiff's requested fees are set forth below.

| Attorney | Rate | Mixed Hours | Non-Mixed Hours | Mixed Hours reduced by 40% | Total |
|---|---|---|---|---|---|
| Ryan Abbott | $895 | 79.2 | 55.0 | 47.52 | $91,755.40 |
| Kete Barnes | $395 | 202.6 | 180.6 | 121.56 | $119,353.20 |
| **Total** | | | | | $211,108.60 |
| **Total with Multiplier** | | | | | $263,885.75 |

Defendants do not object to the reasonableness of Plaintiff's counsel's hours or rates. (*See generally* Defs' Opp.; Defs' Supp. Opp.) Defendants do object, however, to Plaintiff's proposed apportionment rate, (*see* Defs' Supp. Opp. 4), and to the use of a multiplier, (Defs' Opp. 8–9). The Court will therefore examine whether Plaintiff's requested fees are reasonable and consider Defendants' arguments in turn.

A. Reasonable Fees

A district court has "considerable discretion" in determining what constitutes a reasonable fee award. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The "presumptively reasonable fee" is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation marks omitted); *see also Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (same). A court using the lodestar method sets the lodestar, then considers "whether, in light of variables such as the difficulty of the case, it should adjust the lodestar before settling on the reasonable fee." *Arbor Hill*, 522 F.3d at 187.

The party seeking attorneys' fees "bear[s] the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed." *Beastie Boys*, 112 F. Supp. 3d at 48 (quotation marks omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (explaining, in the context of an application for fees pursuant to 42 U.S.C. § 1988, that the fee applicant should submit "evidence supporting the hours worked and rates claimed"). Courts are to exclude requested hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Additionally, "[attorneys'] fees must be reasonable in terms of the circumstances of the particular case[.]" *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999). "There is no precise rule or formula for determining a proper attorney[s'] fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys*, 112 F. Supp. 3d at 48 (alteration and quotation marks omitted).

The Court has reviewed the contemporaneous records identifying the hours spent on each task, "with a view to the value of the work product of the specific expenditures to the client's case[,]" and finds those hours reasonable. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d

Cir. 1997). For example, this is not a case where Plaintiff's counsel block billed or submitted vague time entries. *See Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830, 2012 WL 5177491, at *4 (S.D.N.Y. Oct. 19, 2012) (noting that "[c]ourts look unfavorably on block billing and vagueness in billing"), *aff'd*, 533 F. App'x 1 (2d Cir. 2013)). Nor is there indication that attorneys duplicated work. *Barbour v. City of White Plains*, No. 07-CV-3014, 2013 WL 5526234, at *6 (S.D.N.Y. Oct. 7, 2013) ("It is . . . proper to reduce a fee request when two or more attorneys have duplicated each other's work, since some of the work was unnecessary and the time claimed thus was unreasonable.") (ellipsis in original) (quoting *Williams v. N.Y.C. Hous. Auth.*, 975 F. Supp. 317, 326–27 (S.D.N.Y. 1997)). Although Defendants suggest one group of entries "reflect[s] an excessive 20+ hours drafting" the Complaint, (Defs' Supp. Mem. 5), they only raise that point in regard to apportionment; they do not argue that the proposed lodestar calculation is unreasonable.

As to rates, Abbott's rate slightly exceeds the typical range for partners in breach of contract actions, while Barnes' rate hews close to the reasonable range in similar cases. *See Glob. Brand Holdings, LLC v. Accessories Direct Int'l USA, Inc.*, No. 17-CV-7137, 2020 WL 9762874, at *7 (S.D.N.Y. May 29, 2020) (collecting cases and finding partner rates "in the range of $375 to $650" to be reasonable in "straightforward breach of contract actions"), *report and recommendation adopted*, 2020 WL 13823745 (S.D.N.Y. Aug. 4, 2020); *id*. at *8 (collecting cases and noting fees of "$200 and $375 per hour" are reasonable for associates in breach of contract actions (quoting *Matteo*, 2012 WL 5177491, at *3)).[1] As Plaintiff notes, however, cases examining prevailing community rates are backward-looking. So courts may "increase[] the

---

[1] Although Barnes is currently counsel, (*see* Barnes Decl. ¶ 10), his rate tracks the reasonable range for associates in similar actions.

5

rates awarded in the same case over time" as "hourly rates continue to increase." *Gulino v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 96-CV-8414, 2021 WL 4463116, at *5 (S.D.N.Y. Sept. 24, 2021), *report and recommendation adopted*, 2021 WL 4443628 (S.D.N.Y. Sept. 28, 2021). And to the extent Abbott's rate is on the higher end for breach of contract actions, it is well within the reasonable range for commercial litigation cases generally. *See Tessemae's LLC v. Atlantis Cap. LLC*, No. 18-CV-4902, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019) (collecting cases supporting reasonableness of "hourly rates ranging from $250 to $1,260 per hour[] [for] work on a commercial litigation matter"). Given the hourly rates in this District, and the level of experience of Plaintiff's counsel, the Court finds the requested hourly rates of $895 and $395 to be reasonable.

Based on its review of the record, the Court finds that Plaintiff has satisfied its initial burden to demonstrate that its fee request is reasonable. To the extent Plaintiff's counsel's rates or hours are excessive, Defendants have not objected to either one. The Court therefore awards attorneys' fees at the rates and hours proposed by Plaintiff, subject to the lodestar reduction discussed in the following section.

B.  Lodestar Reduction

All Parties agree that any award should be reduced because Plaintiff is only entitled to fees under one of the four contracts involved in this Action. They disagree, however, about how much to apportion those fees and as to which categories of hours. Specifically, Plaintiff argues that it should receive 100% of fees for Non-Mixed Hours—i.e., time "incurred regardless of the cause of action" (Pl's Supp. Mem 3; Barnes Decl. ¶¶ 3–4.)—and 60% of fees for Mixed Hours, which "did not differentiate between . . . each cause of action," (Barnes Decl. ¶ 4). Defendants argue that Plaintiff should only be allowed to recover for the two entries "exclusively attributable" to work on the Fourth Contract. (Defs' Supp. Opp. 2 (quotation marks omitted).)

In the alternative, they argue that Plaintiff should only be allowed to recover 25% of both Mixed *and* Non-Mixed Hours.  (*Id*. at 3.)

        1.  Non-Mixed Hours

The Court first examines whether Plaintiff can recover fees for Non-Mixed Hours and, if so, how much.

Generally, "[w]hen calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting." *Millea*, 658 F.3d at 168. Hours that "further[] both fee-shifting and non-fee-shifting claims[, however,] may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint." *Id*. at 168 n.4; *see also Sheet Metal Workers' Nat'l Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-CV-121, 2015 WL 3444896, at *13 (E.D.N.Y. May 28, 2015) (same); *Barati v. Metro-N. R.R. Co.*, 939 F. Supp. 2d 153, 158 (D. Conn. 2013) (same).

*Millea* forecloses Defendants' argument that Plaintiff may not recover any fees for Non-Mixed Hours.  In terms of apportioning those hours, Defendants argue for a steep 75% reduction. (*See* Defs' Supp. Opp. 3.)  While apportionment is certainly appropriate for Mixed Hours, Defendants do not explain why a similar reduction is required for hours necessary to further the litigation as a whole.  (*See generally* Defs' Supp. Opp.)  And notably, Defendants do not challenge that Non-Mixed Hours do, in fact, represent hours Plaintiff would have "incurred regardless of the cause of action asserted." (*See* Barnes Supp. Decl. ¶ 3.)  The Court therefore awards Plaintiff's requested fees for Non-Mixed Hours.  *See Baim v. Notto*, 316 F. Supp. 2d 113, 120 (N.D.N.Y. 2003) (stating that where significant "time is devoted to the litigation as a whole . . . a downward reduction is less appropriate").

2. Mixed Hours

The Court next considers how to apportion Mixed Hours—time billed for work on one or more of Plaintiff's substantive claims.

A court's broad discretion in awarding attorneys' fees applies even in cases where a plaintiff may recover under some claims but not others. *See Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-CV-8987, 2022 WL 413229, at *12 (S.D.N.Y. Feb. 9, 2022). For instance, "it is not an abuse of discretion for the court to award the entire fee" "[w]here the district court determines that [] successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'" *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (alteration in original) (quoting *Dominic v. Consol. Edison Co. of N.Y., Inc.*, 822 F.2d 1249, 1259 (2d Cir. 1987)).

The same "concept can be applied . . . in contexts such as this—where some claims are covered by a fee-shifting provision, but others are not." *Flatiron*, 2022 WL 413229, at *12 (citing *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105, 2019 WL 2051812 (S.D.N.Y. May 9, 2019)). To the extent apportionment is appropriate, a "district court is not obligated to undertake a line-by-line review of [an] extensive fee application. It may, instead, 'exercise its discretion and use a percentage deduction as a practical means of trimming fat.'" *Marion S. Mishkin L. Off. V. Lopalo*, 767 F.3d 144, 150 (2d Cir. 2014) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)). That said, the Court must be careful to avoid "[a]n overbroad application of the 'inextricably intertwined' concept," as doing so "would undermine the limitations in the [Fourth Contract] regarding the scope of claims for which reimbursement may properly be claimed." *Flatiron*, 2022 WL 413229, at *12.

As an initial matter, courts in the Second Circuit have rejected Defendants' first argument that the Court must tie awarded fees to particular billing entries. *See Mishkin L. Off.*, 767 F.3d at

150 (collecting cases and explaining "district courts in our Circuit regularly employ percentage reductions as an efficient means of reducing excessive fee applications"). The Court, moreover, "does not expect that counsel would, as a regular matter, allocate their work on a litigation matter to a particular claim." *Flatiron*, 2022 WL 413229, at *13. Even if they did, it would be "at best, a time-consuming task [and] at worst, [] impossible" to "pars[e] lawyers' billing records on a claim[-]by[-]claim basis[.]" *Id*. at *12. And to impose such a requirement after the fact would be unfair to Plaintiff's counsel, who litigated this case under the (correct) assumption that such specificity is not required.

The caselaw is similarly clear that a court "need not take a strict proportionality approach" in apportioning fees among claims. *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592, 2013 WL 3965247, at *4 (S.D.N.Y. July 31, 2013) (citing *Rivera v. Dyett*, No. 88-CV-4707, 1993 WL 36159, at *4 (S.D.N.Y. Feb. 10, 1993) (refusing a defendant's request that the fee award be reduced by two-thirds because the plaintiff was successful on only one of three claims)). Instead, the "quantity and quality of relief obtained" is the "critical factor" in determining the magnitude of a lodestar reduction. *Id*. (citing *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)). Reflecting that judgment, courts often award a percentage of fees in excess of the percentage of claims for which Plaintiff is entitled to recover. *See Spalluto v. Trump Int'l Hotel & Tower*, No. 04-CV-7497, 2008 WL 4525372, at *16 (S.D.N.Y. Oct. 2, 2008) (adopting report and recommendation that reduced lodestar amount by 20% where the plaintiff achieved only partial success in having the defendant hotel make modifications); *Levy v. Powell,* No. 00-CV-4499, 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005) (reducing lodestar amount by 25% where the plaintiff was successful on only one of three claims at trial, and had withdrawn

9

certain other claims). The Court therefore need not limit its fee award to the percentage of contracts containing fee shifting provisions.

Plaintiff argues that a 40% reduction is appropriate, relying principally on two factors: (1) that it recovered "100% of damages available" on its claims, (*see* Pl's Mem. 17); and (2) that all claims involved the interpretation of "similar minimum purchase requirements," (Pl's Supp. Mem. 6). Those factors do support an award greater than the amount strictly proportional to contracts with fee provisions. *See Kreisler*, 2013 WL 3965247, at *4. Defendants, however, point to two countervailing considerations that lead the Court to further reduce Plaintiff's award. First, there is some tension between the significant number of Mixed Hours Plaintiff seeks to recoup and its argument that all four of its claims rely on a similar set of facts. (*See* Defs' Supp. Mem. 5–6.) Although Plaintiff's billing entries are reasonably transparent, the Court is not convinced that Plaintiff's counsel acted as efficiently as possible in splitting time across the four claims in this fairly straightforward case. Second, the Court is mindful that a particularly large award would undermine the language in the Fourth Contract limiting the scope of recoverable fees. *Flatiron*, 2022 WL 413229, at *12.[2] Taking those factors into account, and appropriately weighing the relief Plaintiff's counsel obtained, the Court finds a 50% reduction of Mixed Hours is appropriate. *See Baim*, 316 F. Supp. 2d at 121 (reducing lodestar amounts "by half (50%) due to plaintiff attaining success on only one of many claims").

---

[2] Defendants argue that Plaintiff should be "estopped" from seeking fees beyond billing entries directly attributable to work on the Fourth Contract because the attorneys' fee provision is limited to "direct legal fees associated with . . . compliance." (Defs' Supp. Opp. 2–3.) Defendants do not dispute, however, that at least *some* of the Mixed Hours are attributable to work enforcing the Fourth Contract. Accordingly, the attorneys' fee provision would appear to cover a portion of that work and it is within the Court's broad discretion to determine reasonable compensation for those hours. *See Flatiron*, 2022 WL 413229, at *12. In doing so, the Court need only "do rough justice," it need "not [] achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

### 3. Multiplier

The Court finally examines whether to award Plaintiff's requested 1.25x multiplier.

"After the [lodestar] computation is done, 'the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys.'" *Ortiz v. Chop't Creative Salad Co.*, 89 F. Supp. 3d 573, 590–91 (S.D.N.Y. 2015) (additional quotation marks omitted) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). "These factors, however, do not always compel enhanced fees." *Goldberger*, 209 F.3d at 53. Indeed, a court generally does not "abuse[] its discretion by awarding . . . a fee that counsel assailed as too stingy." *Id*.

The "risk-of-success factor" is "perhaps the foremost factor to be considered" in awarding an enhancement. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987) (quotation marks omitted). Plaintiff's counsel billed for most of their work on a 40% contingency basis and argue that this arrangement evinces the risk they assumed in taking on this litigation. (Pl's Mem. 17.) But that reasoning is incomplete. The Second Circuit has rejected the argument that attorneys "*must*, as a matter of law, be compensated by a fee enhancement" "because their fee was entirely contingent." *Goldberger*, 209 F.3d at 54 (emphasis in original). A client's choice of payment method, moreover, does not necessarily mean that there was a low chance of success. "[T]here are cases where the risk is 'so slight' that any enhancement for the contingent nature of the fee must be 'minimal.'" *Id*. (quoting *Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973)).

This is such a case. From the beginning of this litigation, it was evident that Defendants failed to meet their obligations under the Parties' contracts—a fact that Defendants did not dispute at summary judgment. (*See* Op. at 21, 26 (Dkt. No. 85).) Plaintiff had to address a number of affirmative defenses, but it maintained a relatively high chance of success regardless.

11

In any event, a multiplier is not required in a case that is a "generally promising matter for the plaintiff" simply because a defendant "enjoyed the potential defenses routinely available" to it. *Goldberger*, 209 F.3d at 55 (quotation marks omitted); *see also In re Agent Orange*, 818 F.2d at 236 ("As the chance of success on the merits or by settlement increases, the justification for using a risk multiplier decreases.").

Plaintiff also argues that a multiplier is appropriate because it "succeed[ed] in recovering 100% of damages available." (Pl's Mem. 17.) But "a big recovery does not necessarily justify a quality multiplier." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (quoting *Goldberger*, 209 F.3d at 56). Beyond the percentage of recovery, Plaintiff's counsel does not explain why their representation is specifically deserving of an enhanced fee. (*See generally* Pl's Mem.; Pl's Supp. Mem.) Because the Court already factored the degree of Plaintiff's success into its reasonable-fee and apportionment determinations, it declines to award a multiplier on the same basis. *See Goldberger*, 209 F.3d at 56 (finding district court "permissibl[y] exercise[d] [its] discretion" when it "declined to award formal multipliers for risk and quality of representation [but] consider[ed] those factors by allowing counsel to recover generous hourly fees").

II.  Conclusion

Applying the Court's conclusions results in the following lodestar calculation:

| Attorney | Rate | Mixed Hours | Non-Mixed Hours | Mixed Hours reduced by 50% | Total |
|---|---|---|---|---|---|
| Ryan Abbott | $895 | 79.2 | 55.0 | 39.6 | $84,667.00 |
| Kete Barnes | $395 | 202.6 | 180.6 | 101.3 | $111,350.50 |
| **Total** | | | | | $196,017.50 |

The Court therefore awards Plaintiff's counsel attorneys' fees in the amount of $196,017.50.

SO ORDERED.

Dated: January 4, 2024
       White Plains, New York

                                           _____
                                                KENNETH M. KARAS
                                                United States District Judge

13